[Civil No. 3389.   Filed June 1, 1934.]

[33 Pac. (2d) 293.]

J. E. CONNOR, Appellant, v. ELDRED TIMOTHY, Appellee.

Messrs. Norris, Flynn & Patterson and Mr. Charles L. Ewing, for Appellant.

Messrs. O'Sullivan & Morgan, for Appellee.

LOCKWOOD, J.—This is an appeal by J. E. Connor, hereinafter called defendant, from a judgment in favor of Eldred Timothy, hereinafter called plaintiff, in an action for slander. The amended complaint upon which the case was tried alleges that plaintiff was a teacher in the public schools of Seligman, Arizona, during the times mentioned in the complaint, and that defendant slandered him three separate times: (a) In the month of October, 1931, by stating to Mary Louise Mundine, in the presence of three other persons, "I'd like to know what becomes of the money that is taken in for the dances and basketball games. Well, Timothy is sure lining his pockets. That bird is sure getting his"; (b) by stating in the presence of F. W. Donovan and R. K. Burrett on the 28th day of March, 1932, "Easterday and Timothy are using the dance fund money for

their personal use''; and (c) by stating on the 5th day of November, 1932, in the presence of some fourteen persons, ''Mr. Timothy drank out of the same jug with a high school boy and I have the proof.'' The proper innuendoes were included in the complaint, showing that the statements were of a slanderous nature. This complaint was filed on the 9th day of March, 1933. Defendant answered and alleged that as to statement (a) the matter was barred by the statute of limitations, as to statement (c) that he did make it, but that it was made at a called meeting of the board of trustees of the Seligman school district, of which board defendant was a member, and was made without malice, for the purpose of advising the other members of the board as to conduct of plaintiff bearing on his qualifications as a teacher, and as to statement (b) he denied making it.

The case was heard before the court sitting with a jury, and the court held statement (a) was barred by the statute of limitations as a cause of action, but allowed it to go to the jury under proper instructions on the question of actual malice on the part of defendant. Upon the trial of the case it developed that statement (b), if made at all, was made some time between the 5th and 8th days of March, 1932, whereupon defendant objected to its being submitted to the jury on the ground that it also was barred by the statute of limitations, since the complaint was filed on the 9th day of March, 1933. To meet this plaintiff offered evidence that defendant, during the year ending March 9, 1933, was temporarily absent from the state for a period of five days, and the court submitted the issue of the statute of limitations on statement (b) to the jury, instructing it that, in determining the issue, the period of defendant's absence from the state should not be included as a part of the

year fixed by the statute. The jury returned a verdict in favor of the plaintiff for nominal damages.

There are twenty-nine assignments of error which we shall consider in accordance with the legal propositions raised thereby in such order as seems most logical. The first is as to whether the court was correct in holding that a temporary absence from the state would be deducted in computing whether or not the cause of action based on statement (b) was barred by the statute of limitations. Our statute (Rev. Code 1928, § 2066) on that point reads as follows:

"§ 2066. Absence from state tolls statute. When a person against whom there shall be cause of action, shall be without the limits of this state at the time of the accruing of such action, or at any time during which the same might have been maintained, such action may be brought against such person after his return to the state, and the time of such person's absence shall not be accounted or taken as a part of the time limited by the provisions of this chapter."

Defendant urges that a merely temporary absence, where the party maintains his permanent residence within the state, such as was admittedly the case with defendant, is not to be considered as tolling the statute. It is generally held that, where the statute uses the words "residence" or "resides out of" or a similar phrase in referring to the absence, temporary absences do not toll the statute. *Penfield* v. *Chesapeake, O. & S. W. R. R.,* 134 U. S. 351, 10 Sup. Ct. 566, 33 L. Ed. 940; *Barney* v. *Oelrichs,* 138 U. S. 529, 11 Sup. Ct. 414, 34 L. Ed. 1037.

But where, as in the case of our statute, the language does not refer to residence, but uses the phrase "shall be without" or similar language, the decisions are in conflict. *Bauserman* v. *Blunt,* 147 U. S. 648, 13 Sup. Ct. 466, 37 L. Ed. 316; *Lane* v. *National Bank,*

6 Kan. 74; *Fisher* v. *Phelps, Dodge & Co.*, 21 Tex. 551; *Blodgett* v. *Ultey*, 4 Neb. 25; *Morrell* v. *Ingle*, 23 Kan. 32. We think, however, the better rule is that under such a statute temporary absences shall be considered as tolling the statute. The court therefore properly submitted to the jury the issue of whether the statute of limitations had run against statement (b), and by the verdict it was resolved in favor of plaintiff.

The next question is whether or not there is sufficient evidence to go to the jury on the question of malice. Defendant pleaded as to statement (c) that the same was qualifiedly privileged, in that it was made to co-members of the board of trustees of the Seligman school district for the purpose of informing them as to the character of plaintiff, so that they could determine whether he was a proper person to continue teaching therein. The general rule in regard to privileged communications is stated in 17 R. C. L., page 341, as follows:

" . . . This general idea has been otherwise expressed as follows: A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation. In the absence of malice an utterance may be qualifiedly privileged, even though it is not true, and notwithstanding the fact that it contains a charge of crime. But mere color of lawful occasion and pretense of justifiable end cannot shield from liability a person who publishes and circulates defamatory matter. Hence, a publication loses its character as privileged, and is actionable, on proof of actual malice, or, at least, such gross disregard of the rights of the person injured as is equivalent to

malice in fact. In the case of a qualifiedly privileged communication the occasion on which it was made rebuts the inference *prima facie* arising from a statement prejudicial to the character of the plaintiff, and puts the burden on him to prove that there was malice in fact, that the defendant was actuated by motives of personal spite or ill will, independent of the occasion on which the communication was made."

Applying this rule, we are of the opinion that statement (c) was qualifiedly privileged. There can be no doubt that a member of a school board owes a duty to his co-members to communicate to them any thing which he honestly believes affected the desirability of securing or retaining the services of a teacher, and such a communication, if in good faith, is privilged, provided it was not made with actual malice. It is true that a large number of citizens of Seligman were present at the meeting of the board when this statement was made, but we think this cannot affect the situation. Much more was statement (b) privileged, for it was made in the presence of only the members of the board.

It was therefore necessary for plaintiff, in order to recover, not only to show that statements (b) or (c) were made by defendant, but that they were made with actual malice. In support of this portion of his case, plaintiff introduced evidence that defendant made statement (a). This was strenuously objected to, on the ground that it also was a privileged communication, and that, while it is true the repeated making of derogatory statements may be offered as evidence of actual malice, yet, when each of the statements offered for that purpose is privileged, none of them is admissible, unless some independent proof of malice, other than such privileged statement, is first offered. *Melcher* v. *Beeler,* 48 Colo. 233, 110 Pac. 181, 139 Am. St. Rep. 273.

Assuming this to be the rule, we consider, then, whether statement (a) was privileged. The circumstances under which it was made were as follows: The citizens of Seligman school district were about to elect a school trustee, one of the candidates being favored by defendant, and the other opposed by him. The candidate whom he opposed was in favor of the retention of plaintiff as a teacher in the school. In the course of a conversation with Mrs. Mary Mundine, who was supporting the candidate opposed by defendant, in the presence of her husband, her son and another party, the school situation was discussed generally, and according to her testimony, corroborated by that of two other witnesses, defendant made the remark in question. It is urged by defendant that this communication was privileged because it was a statement made in the course of an election. It is true that statements respecting political affairs, public officers and candidates for office are in a measure privileged, for one who seeks public office waives his right of privacy, so that he cannot object to any proper investigation into the conduct of his private life which will throw light on the question as to whether the public, which bestows upon him the office which he seeks, shall elect him or not, and a charge made in good faith against such candidate which affects his fitness for the office which he seeks is privileged, even though untrue. We think, however, that the rule obviously does not apply in the present case. Plaintiff was not a candidate for school trustee at the impending election, or for any other office, and charges otherwise actionable, made against his personal character for the purpose of preventing the election of another man to office, do not come within the rule contended for by defendant. In *Coffin* v. *Brown*, 94 Md. 190, 50 Atl. 567, 569, 89 Am.

St. Rep. 422, 55 L. R. A. 732, this question was considered, and the court said:

"Is it to be said that, in order to inform the public of the conduct and character of a candidate for office, any elector can publish false and defamatory statements about any appointee of such candidate without being called upon to answer for them, unless the injured party can establish express malice? To announce such a doctrine would in many cases result in refusing those thus wronged redress for injuries which are far dearer to most men than loss of property, for which the law furnishes relief against the wrongdoer, as it would often be impossible to establish express malice. Freedom of speech and liberty of the press are among the boasted rights of the people of this country; but the abuse of either is not only calculated to cause breaches of the peace, but to do irreparable injury to innocent persons. If every appointee of a president, governor, or other officer seeking re-election, is to be liable to be subjected to false charges, imputing crimes or other acts that bring reproach upon him, and he is to be deprived of all redress on the theory that words so uttered or published are privileged, then, indeed, is his lot an unfortunate one. When public officers, for political or other purposes, select for important positions those who are utterly incompetent or of bad character, such officers deserve to be exposed; but when direct and specific charges are made against their appointees, in order to injure the candidates who appointed them, the publisher of them ought to be prepared to establish them by proof. Our declaration of rights declares 'that any citizen of the state ought to be allowed to speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that privilege.' It is a gross abuse of that privilege to falsely prefer such charges as are made against the appellee in this letter, in order to affect the result of an election at which the one who appointed him was a candidate; and nothing short of proof of their truth can justify their publication.

When, therefore, the appellee proved that the appellant had sent this letter to Mr. Vandiver, the appellant was called upon to establish the charges made in it, and, having offered no evidence in support of them, his pleas of justification were not supported, and presented no bar to the plaintiff's suit.''

Statement (a) was not qualifiedly privileged and was admissible as independent evidence bearing on the question of malice. Such being the case, the evidence in regard to statement (b), even though it were privileged, would also be admissible as bearing upon the same point. We think, therefore, there was sufficient evidence to go to the jury on the question as to whether statements (b) or (c) were made with actual malice, and therefore lost their privileged character.

What we have said disposes of the most important assignments of error. There are a number of others which go to the admission of evidence. We have carefully examined all of them and are of the opinion that, while it is possible one or two of the rulings of the court on the admission of evidence may have been technically incorrect, they were not of sufficient importance to cause a reversal of the case, under article 6, section 22, of the Constitution. Since a discussion of these assignments would be of no value as a precedent in other cases, we do not go into them in detail.

There were four assignments of error regarding the giving of instructions, but since these were not argued by counsel, except in connection with the general propositions of law which we have already discussed, we need not further consider them.

The last assignment is as to certain remarks made by counsel for plaintiff in his argument to the jury. These remarks were improper, but they were withdrawn by counsel, and the court promptly instructed the jury to disregard them, and we cannot say affirmatively that they resulted in prejudicing the jury

under the circumstances. The issue in this case was whether or not defendant did, without legal justification or excuse, slander plaintiff. The jury has found that he did, and the evidence, although in sharp conflict, is sufficient to sustain the verdict. The rulings of the trial court upon the law were correct, with the possible exception of one or two minor questions of evidence.

The judgment of the superior court of Yavapai county is therefore affirmed.

ROSS, C. J., and McALISTER, J., concur.