688 P.2d 617

**GREEN ACRES TRUST, an Arizona corporation, and Green Acres Memorial Gardens, Inc., an Arizona corporation, Plaintiffs-Appellants,**

v.

**May LONDON; Arthur W. Yoder; Cecil M. Yoder; Michael J. Valder and Jane Doe Valder, husband and wife; Harry E. Craig and Jane Doe Craig, husband and wife; David J. Rich and Jane Doe Rich, husband and wife; and Douglas G. Martin, Defendants-Appellees.**

No. 16686–PR.

Supreme Court of Arizona, En Banc.

June 15, 1984.

Supplemental Opinion Sept. 11, 1984.

Gorodezky, Marron & Diamond by John B. Marron, Phoenix, for plaintiffs-appellants.

Goldstein & Kingsley, Ltd. by Philip T. Goldstein, Pamela L. Kingsley, and Marto-ri, Meyer, Hendricks & Victor by Ron Kilgard, Phoenix, for defendants-appellees.

HOLOHAN, Chief Justice.

Appellants Green Acres Trust and Green Acres Memorial Gardens, Inc. ("Green Acres") brought a defamation action against all of the appellees based on oral and written statements published by the appellees during a "press conference" preliminary to the initiation of a class action against Green Acres. The appellees May London, Arthur W. Yoder and Cecil M. Yoder are representative members of the class of plaintiffs in the action filed against Green Acres. Appellees Michael J. Valder, Harry E. Craig, David J. Rich and Douglas G. Martin ("lawyer defendants") are the lawyers for the plaintiffs in that action. The trial court entered summary judgment in favor of all of the appellees, and the Court of Appeals affirmed. *Green Acres Trust v. London*, 142 Ariz. 12, 688 P.2d 658 (App.1983).

Green Acres petitioned for review of the Court of Appeals' decision. We granted review to resolve issues concerning the extent and nature of the privilege enjoyed by attorneys in communications about litigation. We are satisfied with the resolution made by the Court of Appeals as to the non-lawyer appellee defendants, and we approve that portion of the opinion of the Court of Appeals. The remainder of the opinion concerning the liability of the lawyer defendants is vacated.

Considering the facts and inferences drawn from facts in a light favorable to Green Acres against whom summary judgment was entered, *Antwerp Diamond Exchange of America, Inc. v. Better Business Bureau of Maricopa County, Inc.*, 130 Ariz. 523, 637 P.2d 733 (1981), the following facts are relevant to our review of the case.

On Friday, March 5, 1976, the lawyer defendants met to review a draft of a class action complaint to be filed against Green Acres which challenged the particular sales technique employed by Green Acres to sell its "pre-paid funerals." *See People ex rel.*

*Babbitt v. Green Acres Trust*, 127 Ariz. 160, 618 P.2d 1086 (App.1980). Appellee May London, one of the elderly class action clients, also attended the meeting. Sometime during the meeting, Edythe Jensen, a reporter for the Phoenix Gazette newspaper, arrived at the law offices where the meeting was held. One of the lawyer defendants had invited Ms. Jensen to the offices to learn about the basis for the class action. Ms. Jensen received a copy of the drafted complaint and discussed the case with at least one of the lawyer defendants.

Based in part on information obtained from a draft of the complaint and conversations held with the lawyer defendants, Ms. Jensen wrote an article describing the grounds of the class action suit. She quoted the clients and lawyer defendants, and unfavorably characterized the manner in which Green Acres marketed their "prepaid funerals." The Gazette published the article on the following Monday, March 8, 1976, the same day the lawyer defendants filed the class action complaint.

In due course, Green Acres sued the class action clients and lawyer defendants for defamation based on communications made by the lawyer defendants to Ms. Jensen. Green Acres did not, however, name Ms. Jensen nor her employer as party defendants. Green Acres' complaint alleged that the clients authorized, and the lawyer defendants published, the following statements by providing a copy of the drafted complaint and through conversations with Ms. Jensen:

1. That the State Attorney General's office had been investigating the Plaintiffs [Green Acres] for the purpose of filing criminal charges against them in the areas of security [sic] violations and fraud.

2. That the Plaintiffs [Green Acres] had "bilked" up to five thousand people.

3. That the Plaintiffs [Green Acres] had deliberately violated state laws.

4. The Plaintiffs [Green Acres] had "intentionally inflicted emotional distress on its victims."

The trial court entered summary judgment in favor of the defendants. The Court of Appeals affirmed, finding that both an absolute and a qualified privilege to defame protected the lawyer defendants and supported the entry of summary judgment. The court reasoned that the primary requirement for the absolute privilege was pertinence of the communication's content to the proposed or pending judicial proceeding. The court found such pertinence in the oral statements and the written statements contained in the drafted complaint. Finally, the court found a qualified privilege to defame "because the information affected an important interest of the newspaper reporter, i.e., investigating and reporting purported fraudulent business practices, and the comments were made in response to the reporter's request for information." 142 Ariz. 12, 688 P.2d 658.

We consider two issues raised by the petition:

(1) Were the statements made by the attorney-defendants to the newspaper reporter protected from liability by a privilege?

(2) If so, was the privilege absolute or conditional?

## ABSOLUTE PRIVILEGE

As a defense to an action for defamation, the law recognizes that "conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's regulation." Prosser, *Law of Torts* (4th ed. 1971) § 114, p. 776 (footnote omitted). This protection from liability is described as "privilege." There are two classes of privileges, "absolute" and "qualified." The absolute privileges created by law are based upon the recognition that certain persons, because of their special position or status, should be as free as possible from fear that their actions in that position might have an adverse effect upon their own personal interest. Restatement (Second) of Torts, Chapter 25,

Topic 2, Title B, "Absolute Privilege Irrespective of Consent," pp. 242–43. Qualified privileges are limited to particular occasions requiring the exchange of information reasonably thought to be true. *Id.*

In the area of absolute privileges one of the most common is that involving the participant in judicial proceedings. The socially important interests promoted by the absolute privilege in this area include the fearless prosecution and defense of claims which leads to complete exposure of pertinent information for a tribunal's disposition. Prosser, *Law of Torts* (4th ed. 1971) § 114 p. 777–81. The privilege protects judges, parties, lawyers, witnesses and jurors. The defense is absolute in that the speaker's motive, purpose or reasonableness in uttering a false statement do not affect the defense. *Id.* Whether the privilege exists is a question of law for the court, Restatement (Second) of Torts, § 619, and may be properly raised in a motion to dismiss, if the facts establishing the occasion for the privilege appear in the pleadings, *Sierra Madre Development, Inc. v. Via Entrada Townhouses Assn.*, 20 Ariz.App. 550, 514 P.2d 503 (1973), or in a motion for summary judgment. *See Drummond v. Stahl*, 127 Ariz. 122, 618 P.2d 616 (App.1980), *cert. denied*, 450 U.S. 967, 101 S.Ct. 1484, 67 L.Ed.2d 616 (1981).

In various settings, Arizona courts have applied the absolute privilege to defame in connection with judicial proceedings. *See Bailey v. Superior Court*, 130 Ariz. 366, 636 P.2d 144 (App.1981) (statements contained in complaint filed with Commission on Judicial Qualifications); *Drummond v. Stahl, supra,* (statements contained in motion filed to compel withdrawal of counsel and complaint filed with State Bar of Arizona); *Sierra Madre Development, Inc. v. Via Entrada Townhouses Assn., supra* (statement contained in complaint filed); *Todd v. Cox*, 20 Ariz. App. 347, 512 P.2d 1234 (1973) (statements

contained in affidavit attached to motion filed for new trial); *Stewart v. Fahey*, 14 Ariz.App. 149, 481 P.2d 519 (1971) (statements contained in filed *lis pendens,* in context of slander of title action). In order to fall within the privilege, the defamatory publication must relate to, bear on or be connected with the proceeding. *Bailey v. Superior Court, supra,* 130 Ariz. at 368, 636 P.2d at 146; *Drummond v. Stahl, supra,* 127 Ariz. at 125, 618 P.2d at 619. The defamatory content of the communication need not be "strictly relevant," but need only have "some reference to the subject matter of the proposed or pending litigation...." Restatement (Second) of Torts § 586, Comment c.

An attorney's absolute privilege to defame in connection with a judicial proceeding is addressed by Restatement (Second) of Torts § 586, which provides:

> "An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding."

An attorney is protected by the absolute privilege because "[t]o subject him to actions for defamation would fetter and restrain him in the fearless discharge of the duty which he owes to his client, and which the successful administration of justice demands." Veeder, *Absolute Immunity In Defamation: Judicial Proceedings*, 9 Col. L.Rev. 463, 482 (1909). As an immunity [1] which focuses on the status of the actor, the privilege immunizes an attorney for statements made "while performing his function as such." Restatement (Second) of Torts § 586, Comment c. We agree that *"special emphasis must be laid on the requirement that it [statement] be made in furtherance of the litigation and to*

---

**1.** We use the term "immunity" interchangeably with the term "absolute privilege" because the courts have generally used the term "privileges" in connection with defamation actions even though "immunity" might more properly describe the classification. Restatement (Second) of Torts, Chap. 25, Topic 2, Title B, *supra* p. 243.

*promote the interest of justice." Bradley v. Hartford Accident & Indemnity Co.,* 30 Cal.App.3d 818, 826, 106 Cal.Rptr. 718, 723 (1973) (emphasis in original). Without that nexus, the defamation only serves to injure reputation.

While we have not addressed the application of the absolute privilege to this kind of extra-judicial communication, other authorities have considered the "press conference" context and decided against the application of the privilege to communications made in that setting. *Assay v. Hallmark Cards, Inc.,* 594 F.2d 692 (8th Cir.1979); *Bradley v. Hartford Accident & Indemnity Co., supra; Kennedy v. Cannon,* 229 Md. 92, 182 A.2d 54 (1962); *Barto v. Felix,* 250 Pa.Super. 262, 378 A.2d 927 (1977); Restatement (Second) of Torts § 586, Reporter's Note, Appendix p. 517 ("The absolute privilege does not extend to a press conference."); Prosser, *supra,* § 114, p. 781 ("It is clear, however, that statements given to the newspapers concerning the case are no part of a judicial proceeding, and are not absolutely privileged." (footnote omitted)); L. Eldredge, *The Law of Defamation,* § 73H, p. 355–356 (1978). These authorities generally conclude that since publication to the news media lacks a sufficient relationship to judicial proceedings, it should not be protected by an absolute privilege. *See Asay v. Hallmark Cards, Inc., supra,* 594 F.2d at 697.

The lawyer defendants maintain, and the Court of Appeals agreed, that *Johnston v. Cartwright,* 355 F.2d 32 (8th Cir.1966), established a reasonable rule which recognized an absolute privilege for attorney statements to newspaper reporters concerning litigation which was about to be pursued. The rule in the *Johnston* case has not survived in its own circuit. In *Asay v. Hallmark Cards, supra,* the 8th circuit took a different view on the applicability of the privilege defense to statements made to the news media concerning litigation. The *Asay* court concluded that the application of the absolute privilege de-

fense was dependent upon an analysis of the occasion for the communication and the substance of the communication. *Id.* 594 F.2d at 697. Focusing on the occasion of the statements, the *Asay* court concluded that since "[p]ublication to the news media is not ordinarily sufficiently related to a judicial proceeding to constitute a privileged occasion," the absolute privilege should not immunize such publication to the media. *Id.* The court found that this conclusion harmonized with the public policy underlying the privilege:

> The salutary policy of allowing freedom of communication in judicial proceedings does not warrant or countenance the dissemination and distribution of defamatory accusations outside of the judicial proceeding. No public purpose is served by allowing a person to unqualifiedly make libelous or defamatory statements about another, but rather such person should be called upon to prove the correctness of his allegations or respond in damages.

*Id.* at 698. We conclude that the *Asay* ruling represents the better position considering the competing interests to be protected. We believe that both content and manner of extra-judicial communications must bear "some relation to the proceeding." The requirements of *Asay* [2] that the recipient of the extra-judicial communication have some relationship to the proposed or pending judicial proceeding for the occasion to be privileged is sound. *See Sriberg v. Raymond,* 544 F.2d 15 (1st Cir.1976); *Bradley v. Hartford Accident & Indemnity Co., supra; Troutman v. Erlandson,* 286 Or. 3, 8, 593 P.2d 793, 795 (1979) (requires recipient to have "close or direct" relationship to the proceedings). Ordinarily the media will lack such a connection to a judicial proceeding. *Cf. KPNX Broadcasting Co. v. Superior Court,* 139 Ariz. 246, 678 P.2d 431 (1984) (media became intervenors).

In this case, the recipient of the communications, the newspaper reporter, had no relation to the proposed class ac-

---

**2.** Although the *Asay* court attempted to distinguish its opinion from that in *Johnston,* we find the two cases irreconcilable and decline to follow *Johnston.*

tion. The reporter played no role in the actual litigation other than that of a concerned observer. Since the reporter lacked a sufficient connection to the proposed proceedings, public policy would be ill served if we immunized the communications made to the reporter by the lawyer defendants. The press conference simply did not enhance the judicial function and no privileged occasion arose. Accordingly, the lawyer defendants were not absolutely privileged to publish the oral and written communications to the newspaper reporter.

Finally, the lawyer defendants argue that extending the protection of the absolute privilege in this case would be consistent with their ethical duty to effectively represent their clients. To the contrary, we consider their conduct to be inconsistent with our rules of ethics. Two ethical tenets directly counsel against the publicity courted by lawyer defendants. First, lawyers must avoid causing injury to their opponents.

> An attorney has a duty to represent his or her clients zealously. But an attorney has *as* compelling an obligation to avoid unnecessary harm to an adversary. The Model Code of Professional Responsibility expressly recognizes this dual obligation:
>
> > The duty of a lawyer to represent his client with zeal does not militate against his concurrent obligation to treat with consideration all persons involved in the legal process and to avoid the infliction of needless harm.

*Schulman v. Anderson Russell Kill & Olick, P.C.*, 117 Misc.2d 162, 171, 458 N.Y. S.2d 448, 455 (Sup.Ct.1982), *quoting* Model Code of Professional Responsibility EC 7–10 (1979) (emphasis in original). In addition, a lawyer may not make or participate in making an extra-judicial statement which he expects will be disseminated by means of public communication which will likely interfere with the fairness of an adjudicative proceeding. DR 7–107(G), Rule 29(a), Rules of the Supreme Court, 17A A.R.S. These two principles, avoiding unnecessary harm and extra-judicial communications, do not affect a lawyer's ability to further his client's interest. Indeed, inflicting unnecessary harm and defaming the adversary during a press conference cannot be considered as legitimately advancing a client's interest. Therefore, by denying the absolute privilege in this case, we do not curtail zealous representation. We simply decide that "an attorney who wishes to litigate his case in the press will do so at his own risk." *Bradley v. Hartford Accident & Indemnity Co.*, *supra*, 30 Cal.App.3d at 828, 106 Cal.Rptr. at 724, citing *Kennedy v. Cannon*, *supra*.

■ While we decline to extend the absolute privilege to these circumstances, we do not foreclose absolute privilege protection for certain types of statements published before the initiation of proceedings. Restatement (Second) of Torts § 586 expressly includes communications made preliminary to or in the institution of a judicial proceeding. Comment e to that section cautions that

> [The] rule stated in this Section applies only when the communication has some relation to a proceeding that is contemplated in good faith and under serious consideration. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered.

*See Smith v. Suburban Restaurants, Inc.*, 374 Mass. 528, 531, 373 N.E.2d 215, 218 (1978) (absolute privilege not extended to letter where there was "no indication that the attorney seriously contemplated a judicial proceeding in good faith"). The various applications of the absolute privilege to pre-proceeding communications include a demand letter sent to representative of plaintiff's insurer, *Chard v. Calton*, 277 Or. 109, 559 P.2d 1280 (1977) a letter sent to potential defendant, *Sriberg v. Raymond*, 370 Mass. 105, 345 N.E.2d 882 (1976); *Lerette v. Dean Witter Organization, Inc.*, 60 Cal.App.3d 573, 131 Cal.Rptr. 592 (1976), a letter sent to investors which sought information relating to prospective proceeding, *Russell v. Clark*, 620 S.W.2d

865 (Tex.Civ.App.1981), and a printed list of questions prepared in anticipation of proceeding, *Youmans v. Smith*, 153 N.Y. 214, 47 N.E. 265 (1897). The *Russell* court reasoned:

> To grant immunity short of absolute privilege to communications relating to pending or proposed litigation, and thus subject an attorney to liability for defamation, might tend to lessen an attorney's efforts on behalf of his client. The conduct of litigation requires more than in-court procedures. An attorney must seek discovery of evidence, interrogate potential witnesses, and often resort to ingenious methods to obtain evidence; thus, he must not be hobbled by the fear of reprisal by actions for defamation.

*Russell v. Clark, supra,* 620 S.W.2d at 868. Although we recognize that the absolute privilege must protect some kinds of communications uttered preliminary to a judicial proceeding, we find no reason in the case at bar to extend an absolute privilege to the lawyer defendants for the communications made by them to the newspaper reporter. We hold that the lawyer defendants were not protected by an absolute privilege for the oral and written communications published by them to the newspaper reporter.

### QUALIFIED PRIVILEGE

The qualified or conditional privilege is another defense to a defamation action. It is based on the social utility of protecting statements required to be made in response to a legal, moral or social duty. *Aspell v. American Contract Bridge League,* 122 Ariz. 399, 595 P.2d 191 (App. 1979); Prosser, *supra,* § 115, at 786. It differs from the defense of absolute privilege in that "the interest which the defendant is seeking to vindicate is regarded as having an intermediate degree of importance, so that the immunity conferred is not absolute, but is conditioned upon publication in a reasonable manner and for a proper purpose." *Id.* at 785–86. Absent a proper purpose or reasonable manner of publication, the defense fails. The privilege "give[s] protection from liability only

when exercised for the purpose for which [it] is given and with reasonable care that no more harm shall be done to the interests of others than is necessary to accomplish the end for which the privilege is given." Restatement (Second) of Torts, Chap. 25, Topic 3, Title A, "Occasions Making a Publication Conditionally Privileged," p. 258.

In general, Arizona law establishes a two-part analysis for determining whether a qualified privilege exists. The court must first determine whether a privileged occasion arose, and, if so, whether the occasion for the privilege was abused. *Roscoe v. Schoolitz,* 105 Ariz. 310, 464 P.2d 333 (1970). Whether a privileged occasion arose is a question of law for the court, and whether the occasion for the privilege was abused is a question of fact for the jury. *Id.* at 313–14, 464 P.2d at 336–37. To establish that a privileged occasion arose, a defamation defendant must establish that the circumstances in which the communication was made created an obligation to speak. *Id.* at 313, 464 P.2d at 336. *See* Prosser, *supra,* § 115 at 786.

Once a defendant demonstrates that a conditional privilege may apply, the plaintiff may then prove an abuse of that privilege either by proving publication with "actual malice" or by demonstrating excessive publication. *Selby v. Savard,* 134 Ariz. 222, 225–26, 655 P.2d 342 (1982); Restatement (Second) of Torts §§ 600, 604. An abuse through "actual malice" occurs when the defendant makes a statement knowing its falsity or actually entertaining doubts about its truth. *Id.* Abuse through excessive publication results from publication to an unprivileged recipient not reasonably necessary to protect the interest upon which the privilege is grounded. Restatement (Second) of Torts § 604, Comment a.

The lawyer defendants point to the circumstances of this case: a press interview during which they published information assertedly important to the general public because it warned them about a fraudulent business. The lawyer defendants argue

that this information function served a vital interest and deserves qualified privilege protection. Specifically, the lawyer defendants rely on three types of qualified privilege: (1) protection of interest of recipient or a third person, (2) common interest, and (3) reports of public proceedings. The Court of Appeals held that the first type applied, but we reject the application of any type of qualified privilege to this case.

### Protection of Interest of Recipient or a Third Person

The first qualified privilege advanced by the defendants protects communications published by someone under a legal duty or a social obligation to protect others. Prosser, *supra*, § 115, at 787; Restatement (Second) of Torts § 595. The broadness of this formula is due to the "infinite variety" of fact situations which are traditionally collected under this heading. Prosser, *supra*, § 115, at 787–89. The privilege applies to contexts like summoning a police officer, describing a former employee to a prospective employer, or protecting a family member. *See, id.* This type of privilege applies to reports published by private investigators to their employer. *Roscoe v. Schoolitz, supra; see* Restatement (Second) of Torts § 595, Comment d (privilege applies to statements made for the protection of domestic interest).

The Court of Appeals concluded that publication to the newspaper reporter was qualifiedly privileged because the information affected an important interest of the reporter, i.e., investigating and reporting purported fraudulent business practices, and the comments were made in response to Jensen's requests for information. Referring to Restatement (Second) of Torts § 595, the court apparently felt that the occasion was privileged because "publication [was] . . . within the generally accepted standards of decent conduct."

■ We reach the opposite conclusion, since publication by the lawyer defendants to the newspaper reporter was contrary to the standards of conduct which govern lawyers. As we noted earlier, under our rules of ethics, the lawyer defendants had a duty not to participate in the press conference, particularly when it was obvious that widespread publication would result which might interfere with the opposing party's opportunity for a fair trial. In these circumstances, the lawyer defendants' conduct was far from advancing acceptable standards for attorneys.

While providing information to representatives of the media is socially commendable, this function is normally performed without regard to any particular concept of duty or obligation. Statements to reporters are not generally entitled to any more protection than statements to other members of the community.

We conclude that this qualified privilege is inapplicable to these facts.

### Common Interest

The second qualified privilege urged by the defendants applies where an occasion arises in which "one is entitled to learn from his associates what is being done in a matter in which he has an interest in common with them." Restatement (Second) of Torts § 596, Comment c. This privilege applies in a context like associates in a commercial enterprise, Prosser, *supra*, § 115, at 789, users of mercantile agencies, *Antwerp Diamond Exchange of America, Inc. v. Better Business Bureau of Maricopa County, Inc., supra,* co-owners of property, Restatement (Second) of Torts, § 596 Comment d, or co-members of the board of trustees of a school district. *See, Connor v. Timothy,* 43 Ariz. 517, 33 P.2d 293 (1934). In these contexts, each participant in the association, group or organization depends on other participants to supply relevant information. Through the qualified privilege, courts facilitate the exchange of information by protecting statements about matters affecting the goals of that organization or group. *See Aspell v. American Contract Bridge League, supra* (privilege protects statements published by bridge club members about disciplining of one of the members).

We fail to see how the lawyer defendants enjoyed any special relationship with the newspaper reporter. Although it may be true in a loose sense that the reporter and the lawyer defendants shared a "common interest" in the plight of the elderly, this is not the kind of interest that gives rise to a common undertaking which compels protection from a defamation action. Nor can the asserted "common interest" between present and potential members of the class of plaintiffs suing Green Acres qualify the "press conference" as a privileged occasion. While it may be true that the lawyer defendants owe a duty to provide notice to class members, the occasion and manner of such notice has been established in our Rules of Civil Procedure. See Rule 23, Ariz.R.Civ.P., 16 A.R.S. The common interest privilege does not apply.

### Reports of Public Proceedings

The last qualified privilege advanced by the defendants is that found in § 611 of the Restatement (Second) of Torts, which provides:

> The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.

Judicial recognition of this privilege is based on the ambitious goal of informing the public:

> "Since it is clearly to the interest of the public that information be made available as to what takes place in public affairs, the qualified privilege was recognized, under which a newspaper or anyone else might make such a report to the public. The privilege rests upon the idea that any member of the public, if he were present, might see and hear for himself, so that the reporter is merely a substitute for the public eye—this, together with the obvious public interest in having public affairs made known to all. * * * An important field for the privilege is the reporting of any judicial proceeding...."

Prosser, *supra,* § 118 at 830–831 (footnotes omitted).

The privilege to fairly and accurately report about public proceedings differs from other conditional privileges. It is termed a "special" privilege because it does not depend on the occasion giving rise to the publication like the two previous privileges. Restatement (Second) of Torts § 611, Comment a. It also differs because the publisher may report statements known to be false so long as the publisher fairly and accurately describes those statements. *Id.,* Comment b; *see Eldredge, supra,* § 79, p. 421. Ordinarily the privilege would apply to the news media, those in the business of transmitting the news, but the privilege is not limited to the media. *Id.,* Comment c. Anyone may describe what transpired at a public proceeding so long as the publisher provides a fair and accurate rendition. *Id.* One exception to this wide application is the speaker who by design uses the privilege to republish defamation he previously made during the public proceeding. *Id.* The privilege does not sanction self-serving re-publication. The types of proceedings about which one may comment are varied. Official proceedings are the easier cases, but the privilege also applies to open meetings which are nongovernmental. *Id.,* Comment i. If the proceeding is genuinely open, so that the speaker sees what any member of the public could have seen, and the meeting deals with a matter of public interest, the privilege applies. For example, in *Phoenix Newspapers, Inc. v. Choisser,* 82 Ariz. 271, 312 P.2d 150 (1957), we extended this qualified privilege to a newspaper article which reported the statements made by candidates for mayor and council in a public meeting held by the Junior Chamber of Commerce.

In addition to the types of proceedings, the boundaries of the privilege are defined by the manner in which those proceedings are reported. The report must be fair, and it must be accurate. Accuracy means "substantially correct," while fair means balanced. Restatement (Second) of

Torts § 611, Comment f. In other words, a court must determine whether the report of the public proceeding carries a "greater sting" in defamatory content than the original publication during the proceeding. *Newell v. Field Enterprises, Inc.*, 91 Ill. App.3d 735, 47 Ill.Dec. 429, 415 N.E.2d 434 (1980).

The privilege to report about public proceedings has been extended to reports which described the contents of pleadings which have been filed with the court. *See Newell v. Field Enterprises, Inc., supra; Campbell v. New York Evening Post, Inc.*, 245 N.Y. 320, 157 N.E. 153 (1927). Two different privileges operate in this context: the absolute privilege protects the lawyer for the contents of the pleading while the category of qualified privilege protects the reporter in reporting the contents of the pleading. "Although it might be thought that the privilege to report should be absolute when the statements reported are themselves absolutely privileged, the policy of encouraging freedom of action by the participants is not applicable to the report, and a qualified privilege is therefore appropriate." *Note, Developments in the Law —Defamation,* 69 Harv.L.Rev. 875, 928 (1956).

█ The lawyer defendants argue that their "press conference" communications amounted to a fair and accurate report of the contents of the class action complaint. Green Acres counters that the communications went far beyond the borders of the complaint. We do not reach this dispute because we conclude that a pleading must be filed with the court before this privilege may apply to reports which describe the pleading. Though jurisdictions are split over whether filing a complaint is enough in itself, or whether some judicial action must occur before the privilege can attach, *see* Annotation, 20 A.L.R. 4th 576 (1983), no dispute exists over the minimal requirement of filing. Absent filing, the drafted complaint was not a "public" matter.

█ The "press conference" in the lawyer defendants' office was little more than a private meeting and "the privilege does not extend to a report of a private meeting, not open to the general public...." Restatement (Second) of Torts § 611, Comment i. Obviously, there could not be a report of an official or public proceeding absent the existence of that proceeding. The lawyer defendants are not entitled to the qualified privilege to defame under § 611.

We conclude that no absolute or qualified privilege to defame protected the lawyer defendants in their communications with the newspaper reporter under the circumstances of this case. We therefore vacate that part of the opinion of the Court of Appeals granting an absolute or qualified privilege to the lawyer defendants' communications. The judgment of the trial court in favor of the lawyer defendants is reversed, and the action against those defendants is remanded to the trial court for further proceedings consistent with this opinion.

GORDON, V.C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.

## SUPPLEMENT TO OPINION

HOLOHAN, Chief Justice.

In the motion for reconsideration filed by the defendants Valder, they contend that the role of attorney Valder in the events giving rise to this litigation has been misstated.

It must be noted that the case was resolved in the superior court on summary judgment, and the contested facts in the case have never been resolved by trial. This court, however, following the well recognized rule on appeal stated the evidence, as well as all inferences reasonably to be drawn from the evidence, in the light most favorable to the party against whom the summary judgment was rendered. *Farmers Ins. Co. of Arizona v. Vagnozzi*, 138 Ariz. 443, 675 P.2d 703 (1983); *Portonova v. Wilkinson*, 128 Ariz. 501, 627 P.2d 232 (1981).

The participation or lack of participation by attorney Valder in the events occurring

620

before and during the so-called press conference are matters to be resolved at trial.

The motion for reconsideration is denied.

GORDON, V.C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.