NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TINA ABRIANI, *Plaintiff/Appellant,*

*v.*

KAREN SLAUGHTER and JOHN SLAUGHTER, wife and husband,
*Defendants/Appellees.*

No. 1 CA-CV 21-0583
FILED 6-21-2022

Appeal from the Superior Court in La Paz County
No. S1500CV201900026
The Honorable Robert Carter Olson, Judge

**AFFIRMED**

COUNSEL

Gordon Rees Scully Mansukhani LLP, Phoenix
By Daryl R. Wilson
*Counsel for Plaintiff/Appellant*

RM Warner PLC, Scottsdale
By Daniel R. Warner
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Brian Y. Furuya joined.

---

**P E R K I N S**, Judge:

¶1        Tina Abriani sued Karen Slaughter and her husband, alleging Slaughter made defamatory statements during a campaign event. Abriani now challenges the superior court's entry of judgment for the Slaughters. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2        Abriani served as the Salome Justice Court's chief clerk when Slaughter's tenure as Justice of the Peace began in January 2010. Some of the justice court's other clerks told Slaughter that Abriani was having an extramarital relationship with a subordinate's husband. Slaughter ordered Abriani to end the relationship and threatened termination if she did not. In May 2011, Slaughter fired Abriani after discovering Abriani continued to contact the husband.

¶3        At a campaign event seven years later, a constituent asked Slaughter to explain the high turnover in her clerk's office. Slaughter replied that she fired her first chief clerk for having an affair with another clerk's husband. Slaughter's remarks became the subject of a Facebook post that the author later deleted.

¶4        Abriani filed suit in May 2019, asserting claims for false light, defamation, and intentional infliction of emotional distress. Abriani alleged Slaughter intended to defame her and paint her in false light by falsely saying Slaughter fired her "for sexual relations with a coworker's husband."

¶5        Slaughter testified at her deposition that she did not remember exactly what she said at the campaign event. She also stated, "as soon as I noticed that I was responding the way I was, I stopped." Slaughter described her office as tense when she arrived in 2010. Her other clerks attributed the tension to Abriani's affair. Abriani's deposition testimony painted a different picture. She testified Slaughter merely warned her to stop text-messaging the husband and fired her for continuing to do so.

**¶6** In August 2020, Slaughter moved for summary judgment on the defamation claim, arguing qualified privilege protected her from liability for her comments at the campaign event. Abriani filed a competing summary judgment motion, arguing qualified privilege did not apply to Slaughter's statements. She also claimed Slaughter "did not know if the relationship was an affair."

**¶7** The superior court granted Slaughter's motion and entered judgment in her favor. The court found Slaughter's statements, which addressed "the operation of the justice court and turnover of staff," protected by qualified privilege.

**¶8** Abriani timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶9** We review the superior court's summary judgment ruling *de novo*, viewing the facts and inferences in the light most favorable to Abriani. *See Lennar Corp. v. Transamerica Ins. Co.*, 227 Ariz. 238, 242, ¶ 7 (App. 2011). Abriani asserts the court erred when it granted Slaughter's summary judgment motion and found (1) Slaughter's campaign comments were protected by qualified privilege, (2) no reasonable factfinder could find actual malice, and (3) Abriani is a public official.

### I.        Availability of Privilege

**¶10** A defendant may "escape liability" for defamation under an absolute or qualified privilege when her speech is "in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation." *Green Acres Tr. v. London*, 141 Ariz. 609, 612 (1984) (quoting Prosser, *Law of Torts* (4th ed. 1971) § 114, p. 776 (footnote omitted)); *see also Chamberlain v. Mathis*, 151 Ariz. 551, 554 (1986).

**¶11** At issue here is the qualified privilege, which "is based on the social utility of protecting statements required to be made in response to a legal, moral or social duty." *Green Acres*, 141 Ariz. at 616. The qualified privilege applies only to statements published for a proper purpose and in a reasonable manner. *Id.* We apply the qualified privilege as a defense to defamation claims when the public's interest in letting a speaker "speak freely and fearlessly" in good faith overshadows the need to protect a defamed person's reputation. *See Burns v. Davis*, 196 Ariz. 155, 160, ¶ 13 (quoting *Melton v. Slonsky*, 19 Ariz. App. 65, 67 (App. 1973)).

¶12          Here, the public's interests are apparent. In our representative democracy, voters depend on elected officials to govern. Voters are encouraged to scrutinize how those officials exercise their authority and manage their offices. Elected officials refuse to answer their constituents' questions at their electoral peril, and constituents should be able to expect honest, forthright answers. One of Slaughter's voters asked her about turnover in her clerk's office, and she answered the question. Slaughter's response is entitled to conditional protection, whether she answered her voter's question at a campaign rally or on the street.

¶13          Abriani argues Slaughter may not benefit from qualified privilege, but we find her arguments unpersuasive. She cites *Ariz. Indep. Redistricting Comm'n v. Fields*, 206 Ariz. 130 (App. 2003), to argue Slaughter's statements cannot be privileged because she uttered them at a political campaign event. But *Fields* involved only the legislative privilege, which absolutely bars the civil or criminal prosecution of legislators performing legislative functions. 206 Ariz. at 136–37, ¶¶ 15–18. Abriani also argues no privilege applies because the campaign event fell outside of Slaughter's required or discretionary functions as a justice of the peace. But the qualified or conditional privilege at issue here is focused on the context or occasion in which a statement is made and the interrelationship between speaker and audience, not the speaker's job description. *See* Rodney A. Smolla, 2 Law of Defamation § 8.2 (May 2022).

**II.          Application of Qualified Privilege**

¶14          Arizona applies a two-part test to determine whether qualified privilege applies to a defendant's statements. *Green Acres*, 141 Ariz. at 616. We look first to "whether a privileged occasion arose, and, if so, whether the occasion for the privilege was abused." *Id.*

**A.          Privileged Occasion**

¶15          A privileged occasion exists if the circumstances underlying a speaker's statements bring about an obligation to speak. *Lewis v. Oliver*, 178 Ariz. 330, 334 (App. 1993). Whether an occasion is privileged or not is a question of law we review *de novo*. *Roscoe v. Schoolitz*, 105 Ariz. 310, 313 (1970); *In re Marriage of Pownall*, 197 Ariz. 577, 580, ¶ 7 (App. 2000). A speaker's statement may give rise to a privileged occasion if the statement is made in response to the recipient's request, and the recipient has an important interest in the statement. *See Roscoe*, 105 Ariz. at 313.

¶16          Abriani argues no privileged occasion occurred because Slaughter's statement served no public purpose. At the campaign event, a

voter asked Slaughter to explain the high turnover of clerks during her service as justice of the peace. Slaughter then listed reasons why her office struggled to retain clerks, including firing her first chief clerk for having an affair with a subordinate's husband. The voter's question probed Slaughter's ability to manage court staff and obligated Slaughter, as a public official, to explain why her office struggled to retain clerks. Slaughter fulfilled that obligation when she provided an answer to the voter's question. *See id.* The voter, the other event attendees, and the public maintained an interest in Slaughter's answer.

¶17 The superior court thus did not err when it concluded the voter's question and Slaughter's answer gave rise to a privileged occasion.

### B. Potential Abuse

¶18 Even if a defendant establishes that a privileged occasion arose, she may still be liable for defamation if she abused that privilege. *See Green Acres*, 141 Ariz. at 616. A defendant abuses a privileged occasion by publishing her statement excessively or with actual malice. *Id.* Actual malice occurs "when the defendant makes a statement knowing its falsity or actually entertaining doubts about its truth." *Id.*

¶19 Whether an abuse occurred is a usually a question of fact. *See Roscoe*, 105 Ariz. at 313. But summary judgment is appropriate if the record lacks evidence to persuade a jury, by clear and convincing evidence, that Slaughter knew her statements were false or entertained serious doubts about their truth. *See Lewis*, 178 Ariz. at 336.

¶20 Abriani contends Slaughter published the statement with actual malice. More specifically, Abriani contends Slaughter made the statement "in reckless disregard of the truth" because she lacked "actual knowledge" of an affair. Nothing in the record indicates Slaughter knew her statement was untrue or entertained any doubt about its truth. Slaughter's deposition testimony revealed that while she lacked personal knowledge of the relationship, she believed Abriani and her subordinate's husband were in a relationship because she heard about it from other clerks and Abriani herself. Slaughter testified she warned Abriani about having a personal relationship with her subordinate's husband and then fired her because she thought Abriani was continuing that relationship. Even Abriani conceded that Slaughter "did not know if the relationship was an affair," underscoring a lack of actual malice. The superior court thus did not err in finding Slaughter did not abuse her qualified privilege and the court properly entered judgment on this basis.

**¶21**      Because we agree Slaughter did not make her statement with actual malice, we need not address whether the superior court erred in finding Abriani was a public official. *See Lewis*, 178 Ariz. at 336 (defamatory statements about public officials require proof of actual malice).

**¶22**      Slaughter requests attorneys' fees incurred on appeal under A.R.S. § 12-349. We deny Slaughter's request because Abriani did not assert any groundless claims or take any position in bad faith. As the prevailing party, Slaughter is entitled to her reasonable costs upon compliance with ARCAP 21.

## CONCLUSION

**¶23**      We affirm.



AMY M. WOOD • Clerk of the Court
FILED:      AA