758 P.2d 1303

Emil FRANZI, a married man, Plaintiff/Appellant,

v.

Donald KOEDYKER and Jane Doe Koedyker, husband and wife; Koedyker Construction Company, Inc., an Arizona corporation; Andrew Kelly and Patricia Kelly, husband and wife; Kevin Oberg and Nancy Oberg, husband and wife; Cienega Ltd., an Arizona corporation; Cienega Properties, Inc., an Arizona corporation and Cienega Corporation Company, an Arizona corporation, Defendants/Appellees.

No. 2 CA–CIV 5374.

Court of Appeals of Arizona, Division 2, Department A.

Dec. 13, 1985.*

* Petition for Review was Granted by Supreme Court on June 4, 1985. The Supreme Court ordered the Petition for Review Dismissed with prejudice on October 17, 1986 and issued its Mandate June 17, 1988.

Law Offices of William J. Risner by Kenneth K. Graham, Tucson, for plaintiff/appellant.

Stompoly & Even, P.C. by Leslie J. Cohen and William G. Walker, Tucson, for defendants/appellees.

Waterfall, Economidis, Hanshaw & Villamana, P.C. by James W. Stuehringer and

Sandra Tedlock, Tucson, for defendants/appellees Kelly, Oberg, and Cienega.

## OPINION

BIRDSALL, Presiding Judge.

This appeal is from a dismissal of the plaintiff/appellant's complaint pursuant to Rule 12(b)(6), Rules of Civil Procedure, 16 A.R.S., for failure to state a claim upon which relief can be granted. The motion to dismiss was made by the defendants/appellees Kelly, Oberg, and Cienega, who alleged failure to state a claim as an affirmative defense in their answer to the complaint. The defendant/appellee Koedyker, who had not answered, joined in the motion to dismiss. Matters outside the pleadings, an affidavit, a deposition, investigative reports, and a transcript of one witness's grand jury testimony, were presented to the trial court and not excluded.

The plaintiff's complaint purported to state a claim for racketeering. A.R.S. § 13-2301(D)(4) as amended effective July 21, 1982, defines racketeering in part:

"4. 'Racketeering' means any act, including any preparatory or completed offense, committed for financial gain, which is chargeable or indictable under the laws of the state in which the act occurred and, if the act occurred in a state other than this state, would be chargeable or indictable under the laws of this state had the act occurred in this state and punishable by imprisonment for more than one year, regardless of whether such act is charged or indicted, involving:

\*　　\*　　\*　　\*　　\*　　\*

(n) Obstructing or hindering criminal investigations or prosecutions.

\*　　\*　　\*　　\*　　\*　　\*

(t) A scheme or artifice to defraud."

The racketeering statute also provides a civil remedy in A.R.S. § 13-2314(A):

"A person who sustains injury to his person, business or property by racketeering as defined by § 13-2301, subsection D, paragraph 4 or by a violation of § 13-2312 may file an action in superior court for the recovery of treble damages and the costs of the suit, including reasonable attorney's fees...."

The gist of plaintiff's complaint was that the individual defendants gave false testimony to a Pima County Grand Jury, resulting in an indictment against the plaintiff charging him with six counts of perjury and six counts of false swearing before the grand jury. The indictment was subsequently dismissed. The complaint does not actually allege a conspiracy. However, paragraph XXXV thereof alleges that A.R.S. § 13-1003, which defines criminal conspiracy, was a law in effect at all material times and sets forth the language of that statute. And in the appellant's written opposition to the motion to dismiss, he states that his "Complaint is additionally predicated upon an alleged scheme or conspiracy amongst the Defendants to not only commit perjury and give false statements, but also to obstruct or hinder justice." The appellees do not contest this statement, and the motion to dismiss was presented to the trial court on that theory, together with others. Division One of our court has recently observed that when a civil wrong occurs as the result of concerted action, the participants in the common plan are equally liable. The court further observed that the word "conspiracy" is generally used in connection with imposing vicarious liability for concerted action. *McElhanon v. Hing,* 151 Ariz. 386, 728 P.2d 256 (App.1985). We will treat the complaint as one alleging a conspiracy.

The thrust of the motion to dismiss was the long established rule of law giving witnesses in a judicial proceeding absolute immunity against any civil damage claim arising out of their immunized statements. An exception may be found in malicious prosecution and abuse of process claims. See *Sierra Madre Development, Inc. v. Via Entrada Townhouses Association,* 20 Ariz.App. 550, 514 P.2d 503 (1973). We are not concerned with any such claim here.

In a minute entry under advisement ruling granting the motion, the trial court succinctly said, in part,

"More importantly, it is the Plaintiff's indictment based upon this conduct and immunized statements that is the basis for his alleged damages. But for this indictment the Plaintiff would not have been injured. The Plaintiff's complaint must therefore be dismissed. Under no set of facts urged by the Plaintiff would his RICO [racketeering] claims survive. *Folk v. City of Phoenix*, 27 Az.App. 146 [551 P.2d 595] (1976)."

We must decide five issues to resolve this appeal:

(1) Does the rule of witness immunity preclude this racketeering action alleging conspiracy to hinder or obstruct a criminal investigation or prosecution? We hold that it does not.

(2) Should we review the trial court judgment as a judgment on the pleadings or as a summary judgment? We believe it must be treated as a summary judgment.

(3) Is there sufficient evidence of a conspiracy to withstand a motion for summary judgment? We find there was.

(4) Can the dismissal be affirmed because of use and prosecutorial immunity given the appellees? We hold it cannot.

(5) Should the appellant's claim for damages to his name and reputation have been dismissed? We agree that it should. For these reasons we reverse the judgment except for the dismissal of the claim for injuries to name and reputation.

The following facts are not in dispute. We will discuss other facts as necessary in this opinion. In late 1982, the Pima County Grand Jury was investigating alleged irregularities concerning a contract for janitorial services for Pima County. The investigation soon broadened into an investigation of alleged unlawful financial contributions to the campaign of county supervisor Conrad Joyner. An entity called "Radecon" (apparently a secret code or anagrammatical name for "Conrad") had allegedly been set up to receive illegal contributions to Joyner's campaign. Joyner had run, unsuccessfully, for the Republican nomination for the United States House of Representatives. The appellant, Emil Franzi, was a county employee who was helping Joyner in the campaign. The Pima County attorney who was assisting the grand jury investigation learned that the appellees might have information concerning the campaign contributions. They were interviewed, and subsequently appellees Koedyker and Kelly testified before the grand jury. After Franzi was indicted the appellee Oberg was listed as a witness and deposed. At first Kelly refused to testify before the Grand Jury. He was then given use immunity, A.R.S. § 13–4064,[1] and did testify.

ISSUE ONE: WITNESS IMMUNITY

The appellees contend, and the trial court agreed, that the well-established rule that witnesses in a judicial proceeding have absolute immunity from any action against them arising out of their testimony requires dismissal of appellant's complaint. Our supreme court has recently reaffirmed the doctrine of absolute witness immunity. In *Green Acres Trust v. London*, 141 Ariz.

---

1. "§ 13–4064. Order compelling person to testify or produce evidence; immunity from use of such evidence; contempt

In any criminal proceeding before a court or grand jury, if a person refuses to answer a question or produce evidence of any other kind on the ground that he may be incriminated thereby and if the prosecuting attorney, in writing, requests the court to order that person to answer the question or produce the evidence, the court may so order and that person shall comply with the order. When the court denies such a request, the court shall state its reasons for denial in writing. After complying, such testimony or evidence, or any information directly or indirectly derived from such testimony or evidence, shall not be used against the person in any proceeding or prosecution for a crime or offense concerning which he gave answer or produced evidence under court order. However, he may nevertheless be prosecuted or subjected to penalty or forfeiture for any perjury, false swearing or contempt committed in answering, or failing to answer, or in producing, or failing to produce, evidence in accordance with the order. If a person refuses to testify after being granted immunity and after being ordered to testify as aforesaid, he may be adjudged in contempt and committed to the county jail. If the grand jury before which he was ordered to testify has been dissolved, he may then purge himself by testifying before the court."

609, 688 P.2d 617 (1984), the court held that the existence of the immunity may be decided as a matter of law on a motion to dismiss. Although holding that attorneys who conducted a press conference concerning a class action suit they were about to file were not entitled to the defense for statements¹ made on that occasion, the court emphasized both the importance and continuing vitality of the privilege.

"The socially important interests promoted by the absolute privilege in this area include the fearless prosecution and defense of claims which leads to complete exposure of pertinent information for a tribunal's disposition. The privilege protects ... witnesses.... The defense is absolute in that the speaker's motive, purpose or reasonableness in uttering a false statement do not affect the defense." Id. at 613, 688 P.2d at 621.

The appellant first contends that the doctrine applies only to actions for defamation. We disagree. The appellant has cited no authority which so holds. Admittedly, a majority of the cases seem to be complaints of defamation. In Arizona, for example, see *Green Acres,* supra; *Bailey v. Superior Court,* 130 Ariz. 366, 636 P.2d 144 (App. 1981); *Drummond v. Stahl,* 127 Ariz. 122, 618 P.2d 616 (App.1980), cert. denied, 450 U.S. 967, 101 S.Ct. 1484, 67 L.Ed.2d 616 (1981); *Sierra Madre Development, Inc. v. Via Entrada Townhouses Association,* 20 Ariz.App. 550, 514 P.2d 503 (1973); *Todd v. Cox,* 20 Ariz.App. 347, 512 P.2d 1234 (1973); *Stewart v. Fahey,* 14 Ariz.App. 149, 481 P.2d 519 (1971). This is not surprising when the privilege is being asserted as a defense against claims arising out of the publication of false statements. However, no less authority than the United States Supreme Court has allowed the privilege as a defense in a civil rights action under 42 U.S.C. § 1983 (1976). In *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), the court held that a policeman could not be sued for perjury committed in the plaintiff's criminal trial.

On issue one the appellant next contends, again without direct authority, that the doctrine of absolute privilege is inapplicable to racketeering actions. We disagree. This very question was decided in *Sellers v. General Motors Corporation,* 590 F.Supp. 502 (E.D.Pa.1984). The court there said, referring to the federal statute, 18 U.S.C. §§ 1961, et seq. (RICO), "RICO was not intended as a device for circumventing the absolute immunity afforded witnesses at common law." Id. at 506. The appellant acknowledges that the Arizona racketeering statutes were adopted from RICO and points to no difference between them which would lead to a different interpretation.

The appellant finally contends with reference to issue one that he does not rely solely upon the appellees' actions as witnesses to support his claim. In order to decide the first issue, we will assume that the evidence produced by the appellant shows the existence of a conspiracy independent of the immunized statements.

The appellant contends that he has a viable action because the appellees could have been charged with: 1) conspiracy to obstruct or hinder criminal investigations or prosecutions, A.R.S. §§ 13–1003 and 13–2512, and/or 2) participating in a scheme or artifice to defraud, A.R.S. §§ 13–2310 and 13–2311 (1985 Supp.).

The statutes defining these predicate offenses read as follows:

"§ 13–2310. Fraudulent schemes and artifices; classification

A. Any person who, pursuant to a scheme or artifice to defraud, knowingly obtains any benefit by means of false or fraudulent pretenses, representations, promises or material omissions is guilty of a class 2 felony.

B. Reliance on the part of any person shall not be a necessary element of the offense described in subsection A of this section.

§ 13–2311. Fraudulent schemes and practices; wilful concealment; classification

A. Notwithstanding any provision of the law to the contrary, in any matter related to the business conducted by any department or agency of this state or any political subdivision thereof, any per-

son who, pursuant to a scheme or artifice to defraud or deceive, knowingly falsifies, conceals or covers up a material fact by any trick, scheme or device or makes or uses any false writing or document knowing such writing or document contains any false, fictitious or fraudulent statement or entry is guilty of a class 5 felony.

B. For the purpose of this section, 'agency' includes a public agency as defined by § 38–502, paragraph 6.

§ 13–2512. Hindering prosecution in the first degree; classification

A. A person commits hindering prosecution in the first degree if, with the intent to hinder the apprehension, prosecution, conviction or punishment of another for any felony, such person renders assistance to such person.

B. Hindering prosecution in the first degree is a class 5 felony."

The definition of "hindering prosecution" found in A.R.S. § 13–2510 includes:
"knowingly:

\* \* \* \* \* \*

4. Preventing or obstructing by means of ... deception ... anyone from performing an act that might aid in the discovery, apprehension, prosecution or conviction of such person...."

█ In his complaint the appellant also alleged as predicate offenses perjury, A.R.S. § 13–2702, and false swearing, A.R.S. § 13–2703. Neither of these crimes is made a predicate offense in the Arizona racketeering definition. See A.R.S. § 13–2301(D)(4) (1985 Supp.). The complaint could not have been pursued on those allegations. Neither acts involving perjury or false swearing nor preparatory offenses involving perjury or false swearing come within the definition. Conspiracy to commit perjury is not racketeering in Arizona because perjury, as well as false swearing, is not a predicate offense listed in the statute.

█ Nevertheless the appellant argues that the conduct of the appellees is racketeering because it constitutes either a conspiracy to hinder the grand jury investigation and possible criminal prosecution of the appellees or Conrad Joyner, or a scheme to defraud as defined in A.R.S. § 13–2310 or § 13–2311. In response the appellees contend that the absolute immunity afforded them as witnesses is a defense mandating the dismissal of the complaint. This, again, is the critical question which we must answer.

Two recent federal decisions support the appellant's position, *Sellers v. General Motors Corporation,* supra and *San Filippo v. United States Trust Co.,* 737 F.2d 246 (2d Cir.1984). Both were decided after *Briscoe v. LaHue,* supra. In *Sellers,* the plaintiff in a federal RICO civil suit sought damages from witnesses who had allegedly committed numerous illegal acts in order to secure a jury verdict for General Motors Corporation in a personal injury action brought by Sellers. Included in the illegal conduct was giving false testimony both during discovery and in trial. The defendants asserted their immunity as witnesses. Although finding that the complaint failed to plead with sufficient particularity the alleged conduct constituting racketeering, the court made the following observations which are most pertinent here.

"Analyzing plaintiff's RICO claim against defendants Wright and Hogan in light of *Briscoe* is no easy task. RICO was not intended as a device for circumventing the absolute immunity afforded witnesses at common law. This position is supported by the RICO Act itself. The section defining 'racketeering activity' does not include 18 U.S.C. § 1621, which makes perjury a criminal offense. 18 U.S.C. § 1961. It is my view, however, that a *conspiracy to commit perjury* may fall within RICO. If defendants had conspired to commit perjury in order to defeat the plaintiff's claim in Civil Action 80–1847, then such action would arguably be subsumed under the 'scheme or artifice to defraud' language of both the mail and wire fraud statutes which are included in the definition of 'racketeering activity.' In such a case it would be the scheme or conspiracy to defraud plaintiff by use of perjury, rather than the act of perjury itself, that would be

actionable." 590 F.Supp. at 506 (emphasis in original).

Applying that reasoning to the instant case, the appellant's action is directed against the appellees' alleged agreement to protect themselves and Radecon to the appellant's damage by perjury and not to the acts of perjury themselves. If the appellees conspired to commit perjury for these purposes, then their conduct would arguably come within the scheme or artifice to defraud language of A.R.S. § 13–2310 or § 13–2311 or the definition of hindering prosecution found in A.R.S. § 13–2510.

The second and most recent case, *San Filippo v. United States Trust Co.*, supra, was a federal civil rights action against a bank and two of its officers alleging that they conspired with an assistant United States attorney to deprive the plaintiff of his civil rights by testifying falsely before a grand jury concerning his involvement in the fraudulent procurement of a loan. The opinion first recognizes that under *Briscoe* a witness has absolute immunity from liability based on his trial testimony. The court then found that grand jury testimony must be similarly protected. But, as in *Sellers*, the court said that the rationale of *Briscoe* and the immunity doctrine,

> "to encourage witnesses to come forward with all they know—does not justify extending that immunity to cover extra-judicial conspiracies between witnesses and the prosecutor to give false testimony. Nor do we find persuasive defendants' argument that absent the immunity they now seek, every witness could be intimidated by the prospect of defending a civil suit charging 'conspiracy' to give false testimony, just as easily as a suit charging false testimony. Insofar as witnesses may face groundless 'conspiracy' suits, ample protection against costly defense should ordinarily be provided by the possibility of 12(b)(6) dismissal or summary judgment in defendants' favor." 737 F.2d at 255.

The court in *San Filippo* nevertheless found not "one shred of evidence in support of his conclusory assertion of conspiracy" beyond the fact that the witnesses met with the district attorney and a detective prior to their grand jury testimony. Id. at 256. For that reason, the court found that Filippo's complaint should be dismissed under either a federal rule 12(b)(6) motion or summary judgment.

We are persuaded by the reasoning of these two decisions that where the complaint is one of conspiracy to commit one of the predicate acts, even by perjury, a racketeering action may be maintained.

## ISSUE TWO: JUDGMENT ON THE PLEADINGS OR SUMMARY JUDGMENT

■ As we have stated, an affidavit, a deposition, investigative reports, and a transcript of the testimony of one grand jury witness were presented in the proceedings leading to the trial court's ruling. Rule 12(b) provides, in part:

> "If, on a motion asserting the defense numbered 6 to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

See *Payne v. Pennzoil Corp.*, 138 Ariz. 52, 672 P.2d 1322 (App.1983); *Goodman v. Superior Court*, 137 Ariz. 348, 670 P.2d 746 (App.1983). Nothing in the trial court record suggests that the parties realized they were arguing a Rule 56 motion for summary judgment. Neither does anything in the record suggest that any party requested any further opportunity to present matters pertinent to the motion. The written ruling of the trial court makes no mention of summary judgment. However, it appears that the matters outside the pleadings were considered. For example, in his ruling the trial judge said he was unable, *from the facts presented* to find *any evidence* independent of and untainted by immunized testimony.

There is no mention of summary judgment in the briefs filed in this court except

in the appellant's reply brief. There the appellant says:

"Appellees' Statement of Facts relies on information not contained in the pleadings in this matter. Since a dismissal pursuant to Rule 12(b)(6) of the Arizona Rules of Civil Procedure is appropriate only if plaintiff is not entitled to relief under any facts susceptible of proof under the claims stated, and dismissal based on the doctrine of witness privilege is appropriate only if 'the facts establishing the occasion for the privilege appear in the pleadings,' *Green Acres Trust v. London*, 141 Ariz. 609, 613, 688 P.2d 617 (1984), the Appellees' reliance on outside facts is improper.

It should be noted that at no time did the trial judge indicate that he was treating the Appellees' Rule 12(b)(6) Motion as a Motion for Summary Judgment. As a result, although Appellant provided the Court with certain material outside of the pleadings, Appellant was at no time put on notice that it was necessary for him to show that genuine issues of material fact existed which made summary judgment improper. Apparently, the additional materials provided to the Court below by the parties hereto was not utilized by the Court in granting the Appellees' Motion to Dismiss. However, since Appellees refer to this material throughout their Answering Brief, Appellant, without waiving his objection to the use of these outside materials, will respond in kind in this reply brief."

Nevertheless, we believe we are bound by the rule and the prior decisions of our appellate courts to consider the trial court decision as a Rule 56 summary judgment. Both parties submitted evidentiary material to the court. The rule is clear, as are the decisions enforcing it. We see no reason to make an exception and no legal basis for doing so.

ISSUE THREE: IS THERE SUFFICIENT EVIDENCE OF A CONSPIRACY TO WITHSTAND A MOTION FOR SUMMARY JUDGMENT?

■ In the materials submitted with the appellant's opposition to the motion there is evidence that appellee Kelly phoned appellee Koedyker and advised him that Radecon was being investigated and that if anyone asked him questions about it he was to keep his mouth shut. This is the only evidence of any conduct by any of the appellees which is not made in connection with the judicial proceedings. All other statements were made to investigators, in depositions taken during the pendency of the Franzi indictment, or the actual grand jury testimony. The appellant contends that from the instruction to "keep his mouth shut" it may be inferred that the defendants agreed not to tell the truth about the campaign financing and that this eventually became an agreement to maneuver the investigation away from themselves and their candidate to the appellant, who was also involved in the campaign. The appellant then claims that in keeping with their agreement the defendants lied to the grand jury and, as a result of their perjured testimony, he was falsely accused to his damage.

We believe this one incident of non-immunized conduct is sufficient to permit the inferences claimed. The direction to "keep his mouth shut" permits the inference that no one involved should talk about Radecon. Since Radecon was the claimed depository for alleged illegal contributions, keeping quiet would arguably hinder the criminal investigation. The fact that the appellees did not then "keep quiet" but instead testified, although possibly detracting from the inference, does not necessarily eliminate it. Having once permissably inferred that the appellees had agreed to hinder the investigation, it is logical to believe they were acting with that same intent when they did testify. The only criminal charge resulting from the grand jury investigation was the indictment against Franzi. There was no indictment for illegal campaign contributions.

Although the evidence is minimal, we believe it is sufficient to withstand summary dismissal. In reviewing a grant of summary judgment, the evidence must be viewed in the light most favorable to the losing party with that party given the bene-

fit of all reasonable inferences that may be made from the facts. The Arizona cases are legion. See, for example, *Wisener v. State*, 123 Ariz. 148, 598 P.2d 511 (1979).

### ISSUE FOUR: THE USE IMMUNITY

■ It was argued below that at least one of the appellees, Kelly, was given use immunity and therefore he could not be charged or indicted for an offense and thus the racketeering complaint had to be dismissed. The racketeering definition, A.R.S. § 13–2301(D)(4), requires that the act be one which is chargeable or indictable. It is also claimed that one or both of the other appellees were given immunity by the prosecutor assisting the grand jury.

We disagree that any such grants of immunity are a bar to this civil action. While it is true that, at least as to the use immunity given Kelly, his grand jury testimony could not be used in any prosecution for the crime, this is not a criminal prosecution. Further, the immunity was not transactional immunity and he could still be charged or indicted on other evidence, thus satisfying that requirement of the definition.

The complaint was not subject to dismissal because of the grants of immunity.

### ISSUE FIVE: DAMAGES TO NAME OR REPUTATION

■ The complaint alleged that the appellant had been injured, in part, by having his good name and reputation clouded. In their motion, the appellees sought dismissal of the complaint because A.R.S. § 13–2314(A) provides for a civil action only when the plaintiff has sustained injury "to his person, business or property." The appellees contend that any "injuries to good name and reputation" are not "injuries to the person." The trial court agreed and so do we. A similar question was decided many years ago by the Arizona Supreme Court in *Reed v. Real Detective Publishing Co.*, 63 Ariz. 294, 162 P.2d 133 (1945). In *Reed* the court had to decide whether an action for defamation survived the death of a defendant as an injury to the person. The court held that the libel action abated because it did not come within the Arizona statute (then A.C.A. § 21–534 (1939), Rule 25(b), Rules of Civil Procedure, 16 A.R.S.) providing for survival of certain causes of action, including those for "injuries to the person." Although acknowledging the weight of authority holding an action for libel to be one for an injury to the person, the court declined to follow that authority, relying instead on the minority view which held injury to the person to mean personal physical or mental injury resulting from physical acts. The court also reasoned that this was the intent of our legislature to be gleaned from the existence of two different limitation periods. Section 29–201 of the 1939 Code provided a one-year limitation on actions for "injuries done to the character or reputation of another by libel or slander," while Section 29–202 fixed a two-year limitation period for "injuries done to the person of another." These statutes remain the same. See A.R.S. §§ 12–541(1) and 12–542(1).

We find *Reed* to be analogous and controlling of the question before us. We hold that the appellant cannot maintain this action for damages to his good name or reputation.

In light of the foregoing, we need not decide the fifth issue concerning the appellant's purported attempt to amend the complaint.

Affirmed in part, reversed in part, and remanded.

HATHAWAY and FERNANDEZ, JJ., concur.