900 P.2d 1215

Charles L. DARRAGH and Jane Doe Darragh, husband and wife, Petitioners,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA; The Honorable Thomas Dunevant, III, a judge thereof, Respondent Judge,

Mike MICHAEL, a single man; Bonnie Michael, a single woman; and Alice Michael, a single woman, Real Parties in Interest.

No. 1 CA–SA 95–0005.

Court of Appeals of Arizona, Division 1, Department A.

July 25, 1995.

Graham & Associates, Ltd. by Michael A. Graham, Karen L. Westover, Phoenix, for petitioners.

Fogel and Lamber, P.A. by Dennis M. Lamber, Phoenix, for real parties in interest.

## OPINION

WEISBERG, Judge.

Petitioner Charles L. Darragh seeks special action relief from the trial court's denial of his motion for summary judgment in which he asserted that he is entitled to judicial witness immunity from the claims of Real Parties in Interest, Bonnie, Alice, and Mike Michael (the "Michaels"). To resolve this question, we must decide whether the City of Phoenix ("City") was "seriously contemplating litigation" when Petitioner prepared two appraisals for use by the City in acquiring the Michaels' land.

## SPECIAL ACTION JURISDICTION

■ A special action challenging the denial of summary judgment is appropriate only in exceptional circumstances. *Bledsoe v. Goodfarb*, 170 Ariz. 256, 258, 823 P.2d 1264, 1266 (1991). It is, however, a proper remedy from the denial of a motion for summary judgment which has asserted a defendant's immunity from suit because any benefit of that immunity is lost if the party claiming it is forced to defend himself. *Lavit v. Superior Court*, 173 Ariz. 96, 97, 839 P.2d 1141, 1142 (App.1992). Accordingly, because Petitioner does not have a plain, speedy, or adequate remedy by appeal, we accept jurisdiction. *See* Ariz.R.P. Special Actions 1.

## FACTS AND PROCEDURAL HISTORY

On March 16, 1976, the Phoenix City Council approved in concept the West Area Land Acquisition ("WALA") project designed to acquire and clear property west of Sky Harbor Airport. Because federal funds were to be expended, the City directed that any WALA property must first be appraised, and written purchase offers made, before condemnation actions could be instituted against landowners.[1] On December 5, 1984, the City Council declared the WALA area to be a slum and, on April 24, 1985, approved the Sky Harbor Redevelopment Area,[2] which included the Michaels' property.

On June 14, 1985, the City hired Petitioner to prepare written appraisals of the fair market value of the subject properties and to testify as an expert witness at trial if condemnation proceedings became necessary.

Shortly thereafter, the City Council adopted an ordinance declaring the necessity of taking all WALA and Sky Harbor properties and authorizing their acquisition by donation, purchase, or eminent domain. Petitioner's first appraisal of the Michaels' property, submitted in July 1986, opined a fair market value of $457,741. The City approved Petitioner's appraisal and sent two letters to the Michaels offering to purchase

---

1. *See* Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §§ 4601–4655 (1983).

2. The Sky Harbor Redevelopment Area is a smaller area located within the WALA area.

their property for the appraised amount. The Michaels rejected both offers.

Petitioner later prepared an updated appraisal, and, in 1987, the City filed its condemnation action. Petitioner testified at trial that the fair market value of the Michaels' property was $486,650. The jury, however, determined that the fair market value of the property was $1,250,000. Judgment was entered and paid accordingly.

The Michaels subsequently filed this lawsuit, naming as defendants the City of Phoenix, City employees Owen Wilson and Marshall Rockoff, and Petitioner. Their complaint alleged civil rights damages under 42 U.S.C. § 1983 and RICO damages under Ariz.Rev.Stat.Ann. ("A.R.S.") section 13–2301, asserting that the defendants conspired to give perjured testimony and submit false and fraudulent documents in an attempt to acquire the Michaels' property at less than fair market value.

The claims against Wilson and Rockoff were dismissed in October 1992 and the civil rights cause of action was dismissed in November 1992. Petitioner then filed a motion for summary judgment asserting that he was protected from this suit by judicial witness immunity because both his appraisals and subsequent testimony were services rendered while the City was seriously contemplating eminent domain litigation. The trial court denied his motion, finding that

> at the time that the subject appraisals were done by Darragh, no litigation had been initiated and no litigation could be actually contemplated as to plaintiffs' property, particularly since as between the City of Phoenix and Plaintiffs, the matter was still in the negotiation stage. Moreover, to adopt Defendant Darragh's interpretation of *Western* [*Technologies, Inc. v. Sverdrup & Parcel, Inc.*, 154 Ariz. 1, 739 P.2d 1318 (App.1986)] would cloak virtually any appraisal performed at the request of a governmental entity with absolute immunity. In other words, the *bare* possibility that a proceeding *might* be instituted would afford the cloak of immunity.

Petitioner seeks special action review of the trial court's ruling.

## DISCUSSION

### A. Judicial Witness Immunity

Petitioner contends that his communications regarding the value of the Michaels' property are absolutely privileged because they were in the course of judicial proceedings.

When applicable, an absolute privilege requires that "conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 114, at 776 (5th ed.1984). Accordingly, absolute privileges allow certain persons, because of their special position or status, to "be as free as possible from fear that their actions in that position might have an adverse effect upon their own personal interest." *Green Acres Trust v. London*, 141 Ariz. 609, 612, 688 P.2d 617, 620 (1984).

One of the most widely recognized absolute privileges is that afforded participants in judicial proceedings. *Id.* at 613, 688 P.2d at 621. In various circumstances, this privilege protects judges, parties, lawyers, witnesses and jurors. *Id.* Whether the privilege exists is a question of law for the court. *Id.*

In this case, there are four "acts" for which Petitioner is claiming immunity from civil suit: 1) his deposition testimony; 2) his testimony at trial; 3) his initial appraisal; and 4) his updated appraisal.

### 1. Deposition and Trial Testimony

Witnesses in judicial proceedings have absolute immunity from civil suits arising from their testimony during depositions and at trials. *See id.* at 613, 688 P.2d at 621; *Franzi v. Koedyker*, 157 Ariz. 401, 758 P.2d 1303 (App.1985).

Although the trial court's denial of the motion for summary judgment addressed only the application of immunity to Petitioner's appraisals, we think it is clear, and the parties do not really dispute, that Petitioner is entitled to immunity for his deposition and

trial testimony. *See Green Acres*, 141 Ariz. at 613, 688 P.2d at 621. Accordingly, we hold that Petitioner must receive absolute immunity for his deposition and trial testimony.

### 2. Appraisals

■ Petitioner also argues that he is entitled to judicial witness immunity for his initial and updated appraisals, both of which were prepared prior to the filing of the underlying eminent domain proceeding. He maintains that he is entitled to immunity because, once the City passed the resolution directing that the encompassing areas be acquired, it was "seriously contemplating litigation." Petitioner relies on this court's holding that, for the purpose of applying the judicial witness immunity rule, a "judicial proceeding" includes the period before an action is filed if, during that period, litigation was seriously contemplated. *See Western Technologies, Inc. v. Sverdrup & Parcel, Inc.*, 154 Ariz. 1, 5, 739 P.2d 1318, 1322 (App.1986).

The Michaels respond that, until suit was filed, the City was merely negotiating for the voluntary purchase of the properties, and that litigation was only a "bare possibility." Therefore, they conclude, Petitioner's appraisals are not entitled to judicial witness immunity. Like Petitioner, they rely upon *Western Technologies*.

In *Western Technologies*, the Arizona Board of Regents (the "Board") hired Western to perform geotechnical engineering testing for the expansion of Sun Devil Stadium. After cracks developed in the stadium expansion area, the Board hired a consultant to investigate. The consultant criticized Western's work and blamed it, at least in part, for the stadium's structural defects. The Board then sued Western seeking compensation for its stadium repair expenses. After Western and the Board settled, Western filed suit against the consultant, claiming that it was injured by the consultant's false statements to the Board. The trial court dismissed the action.

Western appealed and this court held that the reports and recommendations of the consultant were absolutely privileged as communications made in connection with judicial proceedings because, at the time the consultant was hired, the Board was seriously contemplating litigation:

> [The consultant] made its statements while the Board was seriously contemplating litigation. Furthermore, because the Board could not assert Western's liability until it obtained an expert assessment of Western's fault, [the consultant's] reports constituted 'a necessary step in taking legal action.' Finally, the Board actually relied upon the reports in bringing suit. Consequently, [the] reports and recommendations were absolutely privileged.

154 Ariz. at 5, 739 P.2d at 1322.

Other courts have agreed that reports, consultations, and advice, which are relevant to litigation as preliminary steps in the institution or defense of a case, are a part of the preparation for trial and are therefore within the absolute privilege accorded communications in judicial proceedings. *See e.g., Walker v. Majors*, 496 So.2d 726, 730 (Ala.1986) (letter sent to defendant prior to filing of suit absolutely privileged); *Middlesex Concrete Prods. & Excavating Corp. v. Carteret Indus. Ass'n*, 68 N.J.Super. 85, 172 A.2d 22, 25 (App.Div.1961) (report of consultant to clients absolutely privileged); *Bruce v. Byrne–Stevens & Assocs. Eng'rs, Inc.*, 113 Wash.2d 123, 776 P.2d 666, 672 (1989) (actions forming basis for expert's testimony absolutely privileged).

■ We agree with the reasoning of the Appellate Division of the New Jersey Superior Court that experts' preliminary reports must be entitled to immunity because:

> If this were not so, every expert who acts as a consultant for a client with reference to proposed or actual litigation, and thereafter appears as an expert witness, would be liable to suit at the hands of his client's adversary on the theory that while the expert's testimony was privileged, his preliminary conferences with and reports to his client were not. . . .

*Middlesex Concrete*, 172 A.2d at 25.

The facts in the instant case demonstrate that, at the time Petitioner prepared his ap-

praisals, the City was seriously contemplating litigation to acquire the Michaels' property. The City Council had adopted several ordinances, including one that declared the necessity of taking the property, and specifically authorized its acquisition, if necessary, by eminent domain. The pre-condemnation negotiations did not mean that the City was not seriously contemplating litigation. To the contrary, its attempt to negotiate a voluntary sale was merely a "necessary step" before filing suit. *See* Phoenix City Council Resolution No. 14618 (referring to compliance with 42 U.S.C. § 4651 (requiring agencies to first negotiate for voluntary purchase from homeowners)).

The City's development plans, as well as its authorization to litigate, were completed prior to Petitioner's appraisals. The City clearly was determined to acquire the Michaels' property, by litigation, if necessary. Furthermore, Petitioner's appraisals were actually relied upon by the City both in making its purchase offers to the Michaels and in initiating suit. We therefore hold that, at the time Petitioner's appraisals were prepared, the City was seriously contemplating litigation. Accordingly, both appraisals are absolutely privileged.

## B. Survival of RICO Action

 Although Petitioner's testimony and appraisals are absolutely privileged, the Michaels' RICO action might still be viable if they can present independent evidence of the existence of a conspiracy to defraud property owners. *See Franzi*, 157 Ariz. at 406–07, 758 P.2d at 1308–09.

In *Franzi*, the issue was whether a RICO action could be maintained against the defendants who had allegedly given false testimony to a Pima County Grand Jury which resulted in the plaintiff's indictment. The court held that, notwithstanding the RICO claim, the defendants were entitled to absolute immunity for their testimony as " 'RICO was not intended as a device for circumventing the absolute immunity afforded witnesses at common law.' " 157 Ariz. at 405, 758 P.2d at 1307 (quoting *Sellers v. General Motors Corp.*, 590 F.Supp. 502, 506 (E.D.Pa.1984)).

The court then considered whether, despite the defendants' immunity, the plaintiff's action might still be maintained because he had alleged 1) a conspiracy to obstruct or hinder criminal investigations or prosecutions, and/or 2) the participation in a scheme or artifice to defraud. The court noted that federal precedent supported plaintiff's argument that "a conspiracy to commit perjury" falls within RICO and that such a claim could arguably be subsumed under the "scheme or artifice to defraud" language of the RICO statute. *Id.* at 406–07, 758 P.2d at 1308–09.

For example, in *San Filippo v. United States Trust Co.*, 737 F.2d 246 (2d Cir.1984), a civil rights action was brought against a bank and two of its officers alleging that they had conspired with an Assistant United States Attorney to deprive the plaintiff of his civil rights by testifying falsely before a grand jury concerning his involvement in the fraudulent procurement of a loan. While the court recognized that the witnesses had absolute immunity from liability based on trial testimony, it nevertheless allowed the conspiracy-based action to be maintained, stating that the rationale of the immunity doctrine is "to encourage witnesses to come forward with all they know [but] does not justify extending that immunity to cover extra-judicial conspiracies between witnesses and the prosecutor to give false testimony." *Id.* at 255.

Similarly, in *Sellers v. General Motors Corp.*, 590 F.Supp. 502 (E.D.Pa.1984), the plaintiff in a federal RICO civil suit sought damages from witnesses who had allegedly committed numerous illegal acts in order to secure a favorable verdict for General Motors Corporation in a personal injury action brought by Sellers. The court allowed the RICO action to be maintained despite the defendants' judicial witness immunity because "[i]n such a case it would be the scheme or conspiracy to defraud plaintiff by use of perjury, rather than the act of perjury itself, that would be actionable." *Id.* at 506.

Relying on this rationale, Division Two of this court held that "where the complaint is one of conspiracy to commit one of the predicate acts, even by perjury, a racketeering action may be maintained" because the action

is directed against defendant's alleged agreement, not against the acts of perjury. *Franzi*, 157 Ariz. at 407, 758 P.2d at 1309.

In the instant case, the Michaels have alleged a conspiracy among the City, City employees, and Petitioner to submit fraudulent documents and perjured testimony in an attempt to acquire their property at below market value. These allegations are sufficient to allege a "scheme or artifice to defraud" under RICO. Therefore, the Michaels may maintain a cause of action against defendant if they can present sufficient evidence, independent of the immunized testimony and appraisals, that Petitioner participated in the alleged conspiracy.[3]

## CONCLUSION

Because we hold that Petitioner's testimony and appraisals are absolutely privileged, we grant relief on this issue. Notwithstanding, because the Michaels are entitled to the opportunity to present sufficient evidence, independent of the immunized testimony and appraisals, of a conspiracy or scheme to defraud them, we uphold in part the trial court's denial of summary judgment. Jurisdiction is therefore accepted and relief granted in part and denied in part. This case is remanded to the trial court for proceedings consistent with this opinion.

FIDEL, P.J., and GARBARINO, J., concur.

---

**3.** By our decision, we hold only that the RICO claim can survive Darragh's claim of immunity. We neither resolve here nor preclude the trial court from examining on remand whether the Michaels can produce sufficient evidence in support of the RICO claim to avoid summary judgment.