[5 NYS3d 816]

JESSE FRIEDMAN, Plaintiff, v KATHLEEN M. RICE, Individually and in Her Official Capacity as Nassau County District Attorney, et al., Defendants.

Supreme Court, Nassau County, February 24, 2015

## APPEARANCES OF COUNSEL

*Debevoise & Plimpton LLP*, New York City (*Mary Beth Hogan* of counsel), for defendants.

*Law Offices of Ronald L. Kuby*, New York City (*Ronald L. Kuby* of counsel), for plaintiff.

## OPINION OF THE COURT

KAREN V. MURPHY, J.

Defendants move this court for an order, pursuant to CPLR 3211 (a) (1) and (7), dismissing the complaint against each of them. Plaintiff opposes the requested relief.

The complaint alleges one cause of action for defamation and one cause of action for intentional infliction of emotional distress; yet, plaintiff concedes in his opposition brief that the cause of action alleging intentional infliction of emotional distress must be dismissed as duplicative of the defamation allegation. Thus, the pared-down complaint is fairly straightforward; however, the underlying history of the complaint is not.

In 1988, when he was 19 years old, plaintiff pleaded guilty to the following charges: 17 counts of sodomy, one count of use of a child in a sexual performance, four counts of sexual abuse, one count of attempted sexual abuse, and two counts of endangering the welfare of a minor. He was sentenced to multiple concurrent terms of imprisonment, the longest of which was 6 to 18 years. He did not appeal.

One month after the sentencing, while in Nassau County Jail, plaintiff appeared on The Geraldo Rivera Show and admitted his guilt to a national audience (*see* tr of show, annexed as part of exhibit C to the moving papers).[1]

In late 2001, after serving 13 years in prison, plaintiff was paroled. In 2002 he was classified as a level three "sexually violent predator" under the Sex Offender Registration Act (Correction Law art 6-C).

Meanwhile, in the fall of 2000, while plaintiff was still in prison, documentary filmmaker Andrew Jarecki began investigating plaintiff's case for a film production. Ultimately Mr. Jarecki created "Capturing the Friedmans,"[2] a film which portrays as deeply flawed the investigation and conviction of plaintiff and his father. On January 10, 2003, after he was released from prison, plaintiff viewed the film.

On January 7, 2004, plaintiff filed a postjudgment motion in County Court, Nassau County, seeking to vacate the 1988 judgment against him, based on evidence he allegedly first discovered while watching the film. Plaintiff claimed the film led him to discover that the prosecution had withheld several categories of exculpatory evidence, and he argued that he would not have pleaded guilty if he had been aware of this evidence. The motion was denied, leave to appeal to the Appellate Division, Second Department was denied, and leave to appeal to the Court of Appeals was dismissed (*People v Friedman*, 6 NY3d 894 [2006]).

---

1. The following conversation took place on The Geraldo Rivera Show:
"Geraldo: What did you do to the children?
"[Plaintiff]: I fondled them. I was . . . forced to . . . to pose in hundreds of photos for my father in all sorts of sexual positions with the kids. And the kids likewise with myself. Oral sex going both ways. I was forced to pose with my penis against their anus. I would control the kids." (Exhibit C at 5.)

2. Arnold Friedman, plaintiff's father, was also arrested and pleaded guilty to multiple counts of child sexual abuse. He committed suicide in prison.

On June 23, 2006, plaintiff filed a petition for a writ of habeas corpus in the Federal District Court for the Eastern District of New York, again based on the new evidence presented in the film. All of plaintiff's claims were dismissed (*Friedman v Rehal*, 2008 WL 89625, 2008 US Dist LEXIS 1062 [ED NY, Jan. 4, 2008, No. 06-CV-3136(JS)]). On appeal, the dismissal was affirmed (*Friedman v Rehal*, 618 F3d 142 [2d Cir 2010]). Nevertheless, the Second Circuit stated the following:

"The record here suggests 'a reasonable likelihood' that Jesse Friedman was wrongfully convicted . . . .

"Only a reinvestigation of the underlying case or the development of a complete record in a collateral proceeding can provide a basis for determining whether petitioner's conviction should be set aside. We hope that, even if she continues to oppose relief in collateral legal proceedings, the current Nassau County District Attorney, who was not responsible for the investigation and prosecution of Jesse Friedman, will undertake the kind of complete review of the underlying case suggested in . . . Comment [(6B)] to Rule 3.8."[3] (618 F3d at 159-160.)

The Second Circuit noted that "it is not possible to predict whether the outcome of any such inquiry will be favorable" to Jesse Friedman (618 F3d at 161).

Following the recommendation of the Second Circuit, Kathleen M. Rice, the Nassau County District Attorney in 2010, commissioned a conviction integrity review for plaintiff's case. She appointed a review team of three senior prosecutors, none of whom were with the District Attorney's office at the time of plaintiff's guilty plea. These three prosecutors were assisted by three assistant district attorneys, a special assistant district attorney, and the office's chief investigator. The review team conducted a comprehensive review of the facts leading up to, and resulting in, plaintiff's conviction, and after nearly three years the review team produced a 155-page report (report, annexed as exhibit B to the moving papers), with a 917-page appendix. The review team reached the conclusion that Jesse Friedman was not wrongfully convicted. The report

---

**3.** Comment (6B) of Rules of Professional Conduct (22 NYCRR 1200.0) rule 3.8 provides that the prosecutor's duty to seek justice includes the prosecutor's duty to take reasonable remedial measures when it appears likely that an innocent person was wrongly convicted.

was made available on the Nassau County District Attorney's website.

The review team was assisted by an advisory panel of four independent and nationally-recognized criminal justice experts. The advisory panel "guided the process and provided their experience and expertise regarding victims of crime, police procedure, and conviction integrity review policies and practices" (report at iii). The advisory panel wrote its own statement as a prelude to the report, wherein it declared that the review team "did an excellent job under difficult circumstances," and "the Report represents the considered, good-faith, and careful analysis of experienced prosecutors and investigators who wanted only to reach whatever result was warranted by the facts and the law" (report at ii).

On June 23, 2014, plaintiff filed a motion pursuant to CPL 440.10 in Nassau County Court seeking to vacate his judgment of conviction and dismiss the underlying indictments. By decision dated December 23, 2014 (*People v Friedman*, NYLJ 1202713882545, Jan. 6, 2015 [Sup Ct, Nassau County 2014]), the Honorable Teresa Corrigan denied plaintiff's motion to overturn his convictions and dismiss the underlying indictments. Judge Corrigan granted, on consent, plaintiff's request for a hearing on actual innocence.

Plaintiff also commenced this action against the former Nassau County District Attorney Kathleen Rice[4] and two information officers employed by her office, namely, John Byrne and Shams Tarek, in June 2014. Plaintiff's claims for defamation and intentional infliction of emotional distress are based upon two groups of statements made within the report and related communications to the press. The first group of statements at issue concerns fictional pornographic stories "that described violent and disturbing sexual acts, including incest, bestiality, and child rape." ("The prison pornography" found in the report, executive summary at iii-iv; report at 50-51; *see also* Byrne email to reporter, annexed as exhibit D, and report by Carol Frank annexed as exhibit E.) The report incorrectly states that Mr. Friedman was punished for writing and distributing these stories. This information was repeated in an email to a reporter, and in press releases.

---

4. Kathleen Rice was elected to the United States House of Representatives in 2014, and stepped down as Nassau County District Attorney in January 2015.

The second group of statements concerns the opinions of Dr. David Pogge, a clinical psychologist, misidentified in the report as plaintiff's psychiatrist. Dr. Pogge evaluated plaintiff in 1988 at the request of plaintiff's attorney. The tests used by Dr. Pogge led him to describe plaintiff as a "psychopathic deviant," a "psychopath," and a "pansexual," and supported Dr. Pogge's conclusion that plaintiff's personality "was consistent with someone who was capable of committing the crimes with which he was charged" (Pogge opinions found in report at 37-38). Plaintiff's attorney at that time asked Dr. Pogge to not provide a formal written report due to the negative evaluation, and Dr. Pogge was not retained as an expert for plaintiff. Plaintiff's argument that Dr. Pogge used inappropriate tests in reaching his conclusion is noted in the report. Plaintiff's attorney also seeks to discredit Dr. Pogge as having a conflict of interest in 1988 at the time of his evaluation of plaintiff. The report included Dr. Pogge's evaluation of plaintiff.

On this motion defendants seek judgment dismissing the complaint in its entirety pursuant to CPLR 3211 (a) (1) and (7).

On a motion to dismiss pursuant to CPLR 3211, the facts as alleged must be accepted as true, the pleader must be accorded the benefit of every favorable inference, and the court must determine only whether the facts as alleged fit within any cognizable theory (*ABN AMRO Bank, N.V. v MBIA Inc.*, 17 NY3d 208, 227 [2011]; *Leon v Martinez*, 84 NY2d 83, 87-88 [1994]). The criterion on a motion pursuant to CPLR 3211 (a) (7) is whether the pleader has a cause of action (*Leon* at 88; *Baumann v Hanover Community Bank*, 100 AD3d 814, 816 [2d Dept 2012]).

The starting point for this court's analysis of defendants' dismissal motion is to assume the truth of plaintiff's allegations in the complaint.

Plaintiff's action herein is based upon statements made about the prison pornography and the Pogge opinions. These statements are found in the report, an email to a reporter from Information Officer Byrne, a reporter's email quoting Information Officer Tarek, and a press release by former District Attorney Rice.

Defendants seek dismissal of the complaint primarily on the ground of privilege. A prosecutor is entitled to absolute immunity or privilege from a civil lawsuit for damages where the prosecutor's challenged activities are "intimately associated with the judicial phases of the criminal process" (*Imbler v*

*Pachtman*, 424 US 409, 430 [1976] [absolute immunity from section 1983 claim for initiation and pursuit of criminal prosecution, despite allegations of knowing use of perjured testimony and deliberate withholding of exculpatory information]). The test is a functional one, looking to the function being performed rather than to the office of the defendant (*Buckley v Fitzsimmons*, 509 US 259, 269 [1993] [no absolute immunity for fabricating evidence during preliminary investigation and making false statements at a press conference announcing an indictment]).

While a prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are protected by a qualified good faith immunity, conduct within the prosecutor's function as advocate is protected by absolute privilege. Such acts include the professional evaluation of the evidence (*see Buckley* at 273); pretrial preparation (*Spinner v County of Nassau*, 103 AD3d 875 [2d Dept 2013] [absolute immunity in connection with failure to interview other witnesses]); pursuit of criminal prosecution (*Wyllie v District Attorney of County of Kings*, 2 AD3d 714 [2d Dept 2003] [absolute immunity for Queens County DA, who brought charges against Kings County ADA, whom grand jury failed to indict]); prosecutorial acts (*Roche v Village of Tarrytown*, 309 AD2d 842 [2d Dept 2003] [absolute immunity for decision to prosecute, and later dropped charges against arrestee]); the performance of quasi-judicial functions in prosecuting crimes (*Hirschfeld v City of New York*, 253 AD2d 53 [1st Dept 1999], *lv denied* 93 NY2d 814 [1999] [issuance of grand jury subpoenas was absolutely privileged]); and discretionary acts taken within the ambit of official duties (*Calderon v County of Westchester*, 111 AD2d 208 [2d Dept 1985] [acts committed in furtherance of criminal prosecution]). Prosecutors enjoy absolute immunity for all actions relating to their advocacy, regardless of motive (*Dory v Ryan*, 25 F3d 81, 83 [2d Cir 1994] [absolute immunity for prosecutor's coercion of perjury at trial]).

The absolute immunity sought here is for statements made in the report and related press statements. Conviction integrity programs are relatively new; they refer to "a set of procedures adopted by a district attorney's office to review and investigate cases where there is a plausible post-conviction claim of innocence—the ultimate system failure" (Barry Scheck, *Professional and Conviction Integrity Programs: Why We Need*

*Them, Why They Will Work, and Models for Creating Them*, 31 Cardozo L Rev 2215, 2217 [2010]). Conviction integrity review provides a means by which prosecutors may comply with the "prosecutorial duty to 'right' wrongful convictions" (*id.* at 2255; Rules of Professional Conduct [22 NYCRR 1200.0] rule 3.8). As such, the review requires professional and discretionary evaluation of evidence and the performance of a quasi-judicial function. Conviction integrity review, by its nature, is "intimately associated with the judicial phase of the criminal process" (*Imbler*, 424 US at 430). Consequently, former District Attorney Rice is entitled to absolute immunity for her conduct in producing the report of plaintiff's conviction integrity review.

In *Imbler*, the seminal case on absolute immunity for prosecutors, the Supreme Court quoted Judge Learned Hand, with approval, for the following statement:

> "As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." (*Imbler* at 428, quoting *Gregoire v Biddle*, 177 F2d 579, 581 [2d Cir 1949], *cert denied* 339 US 949 [1950].)

Indeed, the absence of absolute immunity for conviction integrity reviews would provide a strong disincentive to the commissioning of such reviews.

Plaintiff's attempt to label the prosecutorial conduct at issue as "investigative" or "administrative," so as to bring it outside the purview of absolute immunity (*see Buckley*), is unavailing. The actions of former District Attorney Rice and her review team in producing the report were actions taken in furtherance of such advocacy as is uniquely within the function of a prosecutor. Furthermore, "investigative acts reasonably related to decisions whether or not to begin or to carry on a particular criminal prosecution, or to defend a conviction, are shielded by absolute immunity when done by prosecutors" (*Giraldo v Kessler*, 694 F3d 161, 166 [2d Cir 2012] [prosecutors who interrogated girlfriend of arrestee about incident of domestic violence protected by absolute immunity]).

Based on the foregoing, plaintiff has no state law claim against former District Attorney Rice for the statements made in the report; therefore, former District Attorney Rice is

entitled to judgment dismissing the complaint for failure to state a cause of action for defamation based upon the report.

The complaint alleges that former District Attorney Rice repeated the Pogge opinions, in shorter form, in a press release (complaint ¶ 34). A copy of the subject press release summarizing the 155-page report has been submitted, and it is dated June 24, 2013 (defendants' exhibit F at 2). The investigation's "Key Findings" are set forth as "bullet points." One of these findings relates to the Pogge opinions, although the bullet point refers to "[n]otes from Friedman's attorney [which] reveal that a psychiatrist hired by Friedman prior to his guilty plea found Friedman to be a 'narcissist' and 'psychopath' who was capable of committing the crimes with which he was charged." Pogge is not specifically referred to by name; however, the court concludes that a press release wherein the District Attorney quotes from the report is entitled to the same absolute privilege that shields the report itself. Accordingly, to the extent that plaintiff's claims are based upon such a press release, they are dismissed for failure to state a cause of action.

The court now turns to the claims against the remaining defendants, the information officers employed by former District Attorney Rice's office. The statements at issue here are Mr. Byrne's statement that plaintiff's "possession of these pornographic materials is well-documented in prison records" (complaint ¶ 22), and Mr. Tarek's statement that plaintiff "signed a document in prison acknowledging that the pornographic stories depicting child rape, incest and bestiality, which were confiscated from him, would not be returned" (complaint ¶ 26).

Because absolute immunity is essential to protecting the integrity of the judicial process, it may include not only prosecutors, but also those who assist such an official and act under that official's direction in performing functions closely tied to the judicial process (see Hill v City of New York, 45 F3d 653 [2d Cir 1995] [office employees who assisted prosecutor in making videotapes were as associated with the judicial process as the prosecutor]). As former District Attorney Rice is protected by absolute immunity for her conduct in producing the report, defendants Byrne and Tarek should be similarly protected for making statements based upon the report (Gautsche v State of New York, 67 AD2d 167 [3d Dept 1979] [absolute immunity accorded to Attorney General extended to press release issued by deputy]).

■ Even if the statements by defendants Byrne and Tarek are accorded only the qualified immunity traditionally given to statements to the media (*see Buckley* at 277), they would none-theless remain protected. Statements to the media are protected by the "common interest privilege, which arises when a person makes a bona fide communication upon a subject in which he or she has an interest, or a legal, moral, or social duty to speak, and the communication is made to a person having a corresponding duty or interest" (*Wyllie* at 719 [spokesperson for Kings County DA's Office was protected by qualified common interest privilege for statements to the press]; *Chase v Grilli*, 127 AD2d 728 [2d Dept 1987] [qualified privilege protected statements to press by representatives of the Nassau County DA's office]).

"The shield provided by a qualified privilege may be dis-solved if plaintiff can demonstrate that defendant spoke with 'malice' " (*Liberman v Gelstein*, 80 NY2d 429, 437 [1992]). There are two standards of "malice"; the constitutional standard which requires the statements to be made with a high degree of awareness of their probable falsity (*Liberman* at 438), and the common-law standard which requires a showing of ill will as the speaker's sole motivation for making alleged defamatory statements (*Liberman* at 439).

Plaintiff herein alleges that defendants made and repeated the subject statements identified above "while knowing of their falsity," or "having access to such facts that they should have known of their falsity," and "repeated those statements even af-ter knowing they were false" (complaint ¶¶ 51-52). Accordingly, the issue presented on this motion is whether plaintiff has al-leged sufficient facts establishing constitutional malice, or from which constitutional malice can be inferred.[5]

Conclusory allegations of malice, or the failure to allege facts in the complaint from which malice can be inferred, warrants dismissal of the complaint for failure to state a cause of action (*Hame v Lawson*, 70 AD3d 640, 641 [2d Dept 2010] [failure to allege facts from which malice could be inferred and conclusory allegations of malice]; *WDF, Inc. v Kohler Co.*, 30 AD3d 589 [2d Dept 2006] [conclusory allegations of malice insufficient to overcome common interest privilege]; *Gondal v New York City Dept. of Educ.*, 19 AD3d 141 [1st Dept 2005] [conclusory allega-

---

**5.** Although plaintiff has not alleged that defendants acted with common-law malice, in any event, he has not set forth facts to satisfy this standard.

tions of malice insufficient to overcome qualified privilege]; *Red Cap Valet v Hotel Nikko [USA]*, 273 AD2d 289 [2d Dept 2000] [failure to allege facts from which malice could be inferred and conclusory allegations of malice]; *see also O'Gorman v County of Suffolk*, 2010 NY Slip Op 30998[U] [Sup Ct, Suffolk County 2010] [complaint fails to allege facts supporting a claim of actual malice sufficient to overcome the qualified privilege]).

Here, the Byrne statement at issue is that plaintiff's "possession of these pornographic materials is well-documented in prison records" (Byrne statement, complaint ¶ 22). This statement is supported by an inmate misbehavior report dated July 13, 2000 (exhibit G to the moving papers), wherein Lieutenant "M. Lewis" reported that he reviewed "items held in the contraband locker belonging to inmate Friedman," and among those items "were four pages of stories describing bestiality, dogs having sex with women, rape and violence against women and incest, a woman having sex with her son."

The Tarek statement at issue is that plaintiff "signed a document in prison acknowledging that the pornographic stories depicting child rape, incest, and bestiality, which were confiscated from him, would not be returned" to him. This statement is supported by the interdepartmental communication dated July 22, 2000 that is also signed by plaintiff (exhibit H to the moving papers). Plaintiff does not deny that he signed the interdepartmental communication indicating that the material would be sent to "media review," and giving plaintiff the option of having the items "sent home at your expense," or having the items "destroyed, at your request."

Plaintiff argues that the Tarek statement is particularly egregious because it was made after plaintiff established in a related proceeding before the Honorable Dana Winslow that plaintiff was found "not guilty" of possession of unauthorized literature (*see* exhibit A to Rosen supplemental affirmation). However the basis of this "not guilty" finding is unclear.[6]

Overall, on their face, the Byrne and Tarek statements do not allege facts from which constitutional malice can be established or inferred. At most, any discrepancies in the Byrne

---

**6.** Plaintiff wrote, in a letter to his uncles dated July 30, 2000 (exhibit L to the moving papers), the following: "I plead 'not guilty' to the charge of unauthorized literature, and I was found not guilty. That was the work of the lawyer in letting me know they needed to show the materials in question 'had previously been rejected' where in this case it had not been." (Exhibit L to the moving papers.)

and Tarek statements to the press are minor shortcomings in the long history of plaintiff's attempts to set aside his guilty plea, following his admission of guilt to a national television audience. Under all of the circumstances of this case, the Byrne and Tarek statements are protected by a qualified privilege.

Furthermore, to the extent that the previously noted press release by former District Attorney Rice quotes the Pogge opinions in the report is not shielded by an absolute privilege, it would certainly be protected by the qualified privilege for statements to the press. Furthermore, no facts are alleged in the complaint from which constitutional malice on the part of former District Attorney Rice may be established or inferred.

Based upon the foregoing, defendants' motion to dismiss the complaint alleging a cause of action for defamation is granted in its entirety as to each of the defendants.[7]

---

**7.** The court rejects defendants' remaining contention that plaintiff is "libel-proof." Although the court takes judicial notice of plaintiff's criminal conviction, the doctrine is to be applied with caution. Given the history of this matter, including the Second Circuit opinion discussed above, this court cannot make such a determination as a matter of law based upon the papers before it (*cf. Cerasani v Sony Corporation*, 991 F Supp 343 [SD NY 1998]). Also, based upon defendants' reply papers, and to the extent that it can be said that defendants initially maintained that dismissal should ensue based upon the incremental harm doctrine, defendants acknowledge that this State's highest court has not "conclusively decide[d]" the question as to the applicability of such doctrine. Based upon this court's determinations as to privilege/immunity, this court need not reach the issue of the applicability of the incremental harm doctrine.